[Crim. No. 202.   Third Appellate District.—April 17, 1913.]

## THE PEOPLE, Respondent, v. ERNEST TYREE, Appellant.

CRIMINAL LAW—LARCENY—INDICTMENT WHEN THEFT IN ANOTHER COUNTY.—An information charging larceny of certain cattle in the county into which they were driven and sold after having been stolen is sufficient to give the superior court of that county jurisdiction, without any allegation that the cattle were stolen in another county and thereafter driven into the county wherein the information is filed.

ID.—WITNESS—INSANE PERSON—COMPETENCY IS FOR TRIAL COURT.—The competency of a witness whose sanity is questioned is for the court to determine, and its determination is not a matter for review.

ID.—BURDEN OF SHOWING INCOMPETENCY.—The burden of showing the incompetency of the witness is on the party who asserts it.

ID.—WEIGHT OF TESTIMONY IS FOR JURY.—The court having determined that a witness is competent, when his sanity has been questioned, the weight and effect of his testimony is properly left to the jury.

ID.—INSANE PERSON—WHEN A COMPETENT WITNESS.—A person affected with insanity is competent as a witness, if he has sufficient understanding to apprehend the obligation of an oath and give a correct account of the matter in issue.

ID.—DETERMINATION OF COMPETENCY—PRESENCE OF JURY.—Where a witness is objected to as being insane, the court usually conducts the examination for determining his competency in the presence of the jury, but such examination in this case in the absence of the jury was not prejudicial error.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

Mannon & Mannon, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of grand larceny.   He moved for a new trial, which motion being denied, he was sentenced to imprisonment for the term of five years.   He appeals from the judgment.

It is claimed that "the whole case against the appellant rests upon the credibility of the complaining witness, C. G. Engblom," who, it is further claimed, "was insane and not mentally responsible" and that "the jury should have been permitted to hear the evidence relating to his mental condition, as bearing on his credibility."

It is also contended that the superior court of Mendocino County did not have jurisdiction to try the case.

1. The information charged that the defendant, "on or about the 16th day of June, 1912, at the said Mendocino County, state of California, . . . did then and there feloniously steal, take and drive away" certain cattle, the property, etc. There was evidence that the cattle were owned and were running in Trinity County when taken and were driven to Mendocino County and there sold. There is no averment in the information that the cattle were stolen in or taken from Trinity County and driven into Mendocino County.

In *People* v. *Mellon,* 40 Cal. 648, the defendant was indicted and convicted in the county of Yuba for the larceny of certain cattle. The evidence was that the cattle were stolen in Sacramento County and were afterward driven to the county of Yuba. The provisions of the Practice Act (sec. 92) were the same as section 786 of the Penal Code—where property feloniously taken in one county by larceny, etc., has been brought into another, the jurisdiction of the offense shall be in either county. The court said: "The venue was properly laid in Yuba County. It was unnecessary to state in the indictment the facts showing the commission of the larceny in Sacramento County. We are also of the opinion that it was proper for the prosecution to prove that the property was stolen in Sacramento County, before it was taken into Yuba County." Similarly held in *People* v. *Scott,* 74 Cal. 94, 96, [15 Pac. 384], under section 786 of the Penal Code. In *People* v. *Jochinsky,* 106 Cal. 638, [39 Pac. 1077], the charge was burglary with intent to commit larceny. The case seems to hold that, where the stolen property is taken in one county and removed to another, the latter county has jurisdiction, but that the facts showing that the larceny was committed and that the property was taken and carried to the said county must be set out. *People* v. *Scott,* was cited with approval, in which the court said the true rule was found in *Haskins* v. *People,* 16 N. Y.

344. In that case the court said: "The fact must, therefore, be set out which brings the case within the statutes; but, in the case of one indicted for a simple larceny found in a county into which the thief has carried the property stolen in another county, the law adjudges that the offense was in truth committed there, and hence there is no occasion for a statement in the pleading of what occurred in the other county."

In *People* v. *Prather,* 134 Cal. 386, [66 Pac. 483, 724], the larceny was thus charged: that the defendant, on a certain day, at the county of Sacramento, "did then and there . . . steal . . . from A. D. Miller and Adolph Jean, in the county of Yolo" certain sacks of buckwheat . . . and did "then and there bring said personal property so . . . stolen . . . into the said county of Sacramento." The court quoted from Bishop's New Criminal Procedure, volume 1, section 59, where the author states that "if, after one has taken what completed the theft, he continues traveling away with and still intending to steal them (the goods), each step may be treated as a new trespass and fresh larceny; so that he may be indicted either in the county where he first took the goods, or in any other into which, the intent to steal continuing, he carries them. . . . But it must be felonious in the new county." Said the court, in the case cited: "This principle of law is elementary and involves the proposition that a new larceny is committed in every county to which the thief takes the property; and the correct information in such a case should charge the commission of the crime of larceny in the county where the person is to be prosecuted. Under such circumstances, the first larceny is more matter of evidence and should not be alleged." (Citing *People* v. *Mellon,* 40 Cal. 648; *People* v. *Scott,* 74 Cal. 94, [15 Pac. 384].)

*People* v. *Jochinsky,* 106 Cal. 638, [39 Pac. 1077], was the case of burglary with intent to commit larceny, which was regarded as different from the case of simple larceny, as was pointed out in the New York case cited approvingly.

In the present case it is contended by defendant that "if any crime was committed, it was entirely begun and completed in Trinity County . . . long before the cattle ever saw Mendocino County"; it is hence claimed that "there is a fatal variance between the charge and the proof." The evidence tended to show that the intent to steal the cattle was as mani-

fest when the defendant brought them a short time after they were stolen, into Mendocino County and there sold them, as when he first stole them in Trinity County. No objection was made to the information by demurrer or otherwise and no objection was made to the testimony on the ground of variance. We think the information was sufficient to give the jurisdiction to the superior court of Mendocino County and the evidence was sufficient to support the charge as laid.

2. Only one other point is raised by the brief of defendant. When the complaining witness, C. G. Engblom, was called, and before he was sworn, defendant objected to his competency on the ground that he was "insane and not mentally responsible and that the jury should have been permitted to hear the evidence relating to his mental condition, as bearing on his credibility." Over defendant's objection the jury was excused and, in their absence, witness Charlton was called by defendant and testified that Engblom came to his place of business that morning and the witness undertook to testify to what Engblom said, in his presence and the presence of the witness's father. It was a statement about a horse, a cart, a creek, a set of harness and a line and in the course of which the witness testified that he said: "'My head was hurting me, I had pains in the back of my head this morning, I was almost crazy,'" or "'I was crazy,' or something similar to that; I says that's all right, you go get the line, so he went up the creek; he had it up the creek, and brought it back. Then we come on down to the shop and he wanted me to be sure, and thought it was father's place, and wanted me to be sure and make it all right; he didn't want to make any trouble, and I told him it was all right, it seemed to be with all of us. That's about all I know."

Cross-examination by Mr. Duncan, district attorney: "Q. This man is a foreigner, you discovered that? A. Well, I thought so. Q. He talks a very broken English, it's very difficult to understand him, isn't it? A. Yes, sir. Q. So you inferred simply from his conversation about his wanting a horse, of course you might be mistaken about that. A. Yes, sir. Q. And when you got up to the barn you found he said something about a set of harness, and finally got the word line, and 'creek' and so on, you understood from it that he had taken a line. A. I understood him to say the harness

was up the creek this morning, and I says 'here it is' then he pointed to the bridle bit, and there was one line gone. Q. Well, he brought the line back to you, did he? A. . Yes, sir; then he wanted to be sure there was no trouble; that it wouldn't make any trouble or anything, and wanted me to make it all right. (That's all.) Redirect examination by Mr. Mannon. Q. Did he tell you what he took the line away for, or whether he had taken it away? A. Yes, I understood him to say he had very bad pains in his head and that he had gone crazy or was almost crazy or something, and took it up there I understood him, I couldn't say for sure, that he was going to hang himself, then he said that he had got some medicine later on and that he was all right now; that he was out of medicine for a day or two. (That's all, your honor.) Court: That's all you know about it, is it? A. Yes, sir. Mr. Mannon: Nothing further, if your honor please. Court: Well, the court don't think he is crazy now anyway; might have been something the matter with him, might have lacked some medicine that he had been taking.''

This was on Saturday, November 9, 1912. On the following Monday the case was called and Engblom was, without further objection, sworn and testified. He was examined at some length, in the course of which he gave what appears to be a clear, intelligent and coherent account of his ownership of the cattle, where they were running in Trinity County, when he first missed them, his search for them, his learning where they were in Mendocino County and their final recovery. His cross-examination presents no apparent failure to understand questions put to him or to respond intelligently and to the point. He testified that his memory was poor and that he ''had a good many pains in his head sometimes.'' He also testified that he had been ''pretty sick'' since he came to the trial. ''Q. You take a pair of lines last Saturday out of a man's barn out here?'' Objection made by the district attorney and sustained. ''Q. You use any kind of medicine all the time, Mr. Engblom? A. Yes. Q. What kind of medicine is it?'' Objected to and sustained. Counsel pursued the matter no further. These questions were probably asked with the view of opening up the previous inquiry, made by the court, into the incompetency of the witness by reason of his mental condition.

It is conceded and is undoubtedly true that the question of a witness's competency is for the court to determine. (*People* v. *Stouter,* 142 Cal. 146, [75 Pac. 780] ; *District of Columbia* v. *Arms,* 107 U. S. 521, [27 L. Ed. 618, 2 Sup. Ct. Rep. 840].) The burden is on the party objecting to show the incompetency and the determination of the question by the judge is not matter for review. (*People* v. *Craig,* 111 Cal. 460, 469, [44 Pac. 186].) The court having determined the witness to be competent, the weight and effect of his testimony is properly left to the jury. (*People* v. *Bradford,* 1 Cal. App. 41, [81 Pac. 712].)

Mr. Justice Field, in the Arms case, said: "The general rule, therefore, is, that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have the understanding is a question to be determined by the court, upon examination of the party himself and any competent witness who can speak to the nature and extent of his insanity." The inquiry as to the competency of an insane witness called to testify in a case should be determined by the court by a preliminary examination before the witness is sworn. (11 Am. & Eng. Ency. of Law, p. 145.) It has been held that whether a witness, save when he testifies, was insane at the time of the transaction with regard to which he testifies, goes to the credibility of his testimony, and not to his competency, and it is therefore a subject for evidence to the jury, to be adduced by the opposing party with his other evidence. (*Holcomb* v. *Holcomb,* 28 Conn. 177.) No such question arises here. The then present condition of the witness was the only question raised and was exclusively one for the court. (See *Lopez* v. *State,* 30 Tex. App. 487, 28 Am. St. Rep. 935, 942, and note, [17 S. W. 1058].)

Recurring to the examination by the court, it will be observed that defendant confined his inquiry to a single circumstance involving the conduct of the witness. No expert testimony was offered and Engblom himself was not examined to test his mental condition or to ascertain whether he could intelligently narrate the facts in the case, as was done in *Lopez* v. *State,* 30 Tex. App. 487, [28 Am. St. Rep. 935, 942, 17 S. W.

1058], and, besides, the witness who was called testified that Engblom declared "that he was all right now."

Our code provision is that "persons cannot be witnesses":

"1. Those who are of unsound mind at the time of their production for examination." (Code Civ. Proc., sec. 1880.) Hence the rule stated by Mr. Wharton that "Evidence of mental disturbance at the time of the event narrated can be received to affect credibility" (Wharton on Criminal Evidence, 8th ed., secs. 370–373), and, as is provided for in the Texas statute (*Lopez* v. *State,* 30 Tex. App. 487, 28 Am. St. Rep. 935, 942, [17 S. W. 1058]), has no application under our statute. Says Mr. Wharton: "If the witness, in the opinion of the court, is absolutely incompetent, he should be ruled out. But to justify such exclusion, mere streaks of insanity are not sufficient. A man may have delusions and may be capable of narrating facts truly; and in any event such delusions on his part at the time of the trial go to his credit, and not to his competency." (Ibid.) No attempt was made to present any such state of facts here. So far as appears defendant was given full opportunity to test the question of Engblom's incompetency and failed to establish his claim.

In *State* v. *Simes,* 12 Idaho, 310, [9 Ann. Cas. 1216, 85 Pac. 914], cited by appellant, the court, speaking of the Idaho statute, which is the same as ours, said: "It is to be observed that the unsoundness of mind required to disqualify such witnesses must exist 'at the time of their production' for the purpose of giving testimony. The statute does not undertake to prescribe or define the amount or degree of mental unsoundness that must exist in order to disqualify the witness, but the reason for the existence of such a statute should be invoked, and we interpret that reason to require that the witness should have some apprehension of the obligation of an oath, and that he shall be capable of giving a fairly correct account of the things he has seen or heard, and this test should be made with special reference to the field of inquiry and character of the subject on which the witness is to give testimony. It would be clearly unfair to test the competency of the witness on the particular subject on which he is insane, when in fact he would not be called upon to testify on that subject, and, indeed, he might be perfectly rational and clear on other subjects. We think, as was said in *Clements* v. *McGinn,* 4 Cal. Unrep. 163,

[33 Pac. 923], that 'an insane person is competent as a witness, if he understand the nature of an oath, and has sufficient mental power to give a correct account of what he has seen or heard.' '' (Citing cases.) It will be noticed that counsel for defendant did not, nor did the court, at the preliminary examination of the witness, subject the witness to the true test of his competency as is so well stated in the case cited. There is in fact no question here except the single one,—namely, Was it prejudicial error to conduct the examination as to the competency of the witness Engblom in the absence of the jury? Whether the examination in such cases should, under all circumstances, and as matter of right to defendant, be had in the presence of the jury is a question we have nowhere found decided or commented upon.

The trial courts usually, if not uniformly, conduct the examination in the presence of the jury. The question arises in the course of the trial and is part of it. The decision of the question is with the court, it is true, but it is still with the jury to say whether the witness is to be believed, and there is some force in the contention that the jury would have a right to consider to some extent the testimony given as to the witness's competency in determining his credibility. However, we do not think it necessary to decide the point at this time and hence refrain from doing so.

So far as the facts were developed, had they been testified to in the presence of the jury, they would not have given rise to any reasonable inference affecting the credibility of the witness and hence defendant was not prejudiced.

No question is raised in the brief of the defendant as to the sufficiency of the evidence to justify the verdict.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.