[Civ. No. 6036. First Appellate District, Division One.—January 10, 1928.]

In the Matter of the Disbarment of MARION J. MAZURAN, Also Known as M. J. MAZURAN, an Attorney and Counselor at Law.

D. A. Knapp and J. L. Smith for Appellant.

Collins & Collins and Everett H. Roan for Respondent.

PARKER, J., *pro tem.*—Upon an accusation charging Marion J. Mazuran, an attorney at law, with a violation of his professional duties and of acts involving moral turpitude, a trial was had in the superior court of Fresno County, which caused a judgment to be entered depriving the accused of the right to practice as an attorney and counselor in the courts of the state of California. From this judgment the accused has appealed.

Appellant insists at the outset that the accusation, admitting the facts therein stated to be true, does not contain facts to indicate or charge any conduct on the part of the accused sufficient to constitute a cause for disbarment. The accusation in substance alleges that one Steve Baker, a man of advanced years and infirm, was incapable of handling his business and personal affairs, and that within ten months after the time of the dealings between him and the accused the said Baker was adjudged an incompetent by a court of competent jurisdiction; that in March of 1923 the accused, an attorney at law, knowing of Baker's infirmity and incapacity and playing upon Baker's sentiments by reason of the fact that accused and Baker had both been born in a foreign country and spoke the same mother tongue, procured Baker to execute and deliver to the accused a promissory note for the sum of $25,000, secured by mortgage on certain real property; that at the same time the accused secured from Baker a contract of employment, engaging accused as the attorney for Baker for a period of one year and fixing the compensation of

said attorney at $25,000, and providing also that Baker pay all the necessary expenses of said attorney, including hotel, traveling and incidental expenses, and further authorizing said attorney to employ counsel or attorneys at law to assist him in the business or litigation of Baker; that at or about the same date accused secured from Baker a general power of attorney, giving to said accused full and complete power to handle any and all of the affairs of Baker; that on the same date or thereabouts accused procured and caused the said Steve Baker to set over and convey by deed of gift to one Todorovich, a niece of Baker, certain real estate belonging to said Baker; that the execution of all of the instruments as alleged was without consideration and not the voluntary act of Baker, and the same were induced by the use of undue influence on the part of accused as a plan to defraud the said Baker by persuading and convincing him that such transfers and documents were necessary to protect Baker against certain named creditors, and that said instruments were executed by Baker without opportunity being given him to read the same, and no explanation of the contents thereof afforded; that when said Baker became aware of the nature and effect of the instruments so signed by him he consulted other counsel and commenced an appropriate action to have these transfers and agreement nullified and set aside; that thereupon the accused, and through his agents, procured the dismissal of said actions; that thereafter, to cheat and defraud said Baker, the accused made an assignment of said note and mortgage to a third person for the express purpose of shutting off any defenses that might exist against the original holder; that the accused caused the assignee of said note and mortgage to commence an action to foreclose the mortgage; that the said Steve Baker was cheated, wronged, and defrauded by the said acts of the accused.

Further, the accusation alleges generally the weakness, mental and physical, of Steve Baker; that he had full confidence in and relied upon the accused and that accused took undue and fraudulent advantage thereof.

From this summary it is quite evident that the accusation withstands the attack of appellant in respect of its sufficiency.

■ Further attacking the accusation, appellant claims the same to be uncertain in its allegations to the extent that it cannot be gleaned therefrom wherein any wrongdoing occurs.

From a reading of the accusation there is no merit in this contention. The accusation was full and specific and gave to the accused exact knowledge of the charges made and which he would be called upon to defend against.

■ Next the appellant urges that the court never acquired jurisdiction of the proceedings by reason of the fact that the accusation was not verified. In this respect appellant claims that, while there was an attempted verification, the same was insufficient.

The alleged attempted verification (omitting venue and jurat) is as follows: "Louis Zivanovich, being first duly sworn, deposes and says, that he is the duly appointed, qualified and acting guardian of Steve Baker, an incompetent; that he has read the foregoing accusation and knows the contents thereof; that the accusation and also all of the facts and matters alleged in said accusation are true, and also that all the charges therein contained are true."

It is appellant's point that the party verifying the accusation must say, the facts therein stated are "true *of his own knowledge*," etc., as provided by section 446 of the Code of Civil Procedure.

The Code of Civil Procedure provides for the disbarment of an attorney, and outlines the procedure in section 289 et seq. Section 291 provides: "The accusation must state the matters charged and be verified by the oath of some person to the effect that the charges therein contained are true."

The sufficiency of the verification is to be tested by section 291. We hold the verification to be in accord with the provisions of this section and the decisions construing the same (*In re Collins,* 147 Cal. 8 [81 Pac. 220] ; *In re Morganstern,* 61 Cal. App. 707 [215 Pac. 721]).

■ Appellant further urges that he has been denied his constitutional right by reason of the fact that the person who verified the accusation was not called as a witness.

We deem the contention of little merit. No authority supports the claim. Appellant cites the time-honored provision of the constitution to the effect that every person

accused of crime shall have the right to be confronted with the witnesses against him. Without further comment we hold the argument unsound.

■ The trial of this matter in the court was commenced on March 30, 1925. Complaint is made that the trial court permitted Steve Baker to give testimony at the hearing. The complaint is based upon the fact that in November, 1923, the said Baker was adjudged an incompetent and a guardian of his estate appointed, the court expressly finding, however, that a guardian of the person of said Steve Baker was not required. No authority is cited in support of the argument made. Section 1880 of the Code of Civil Procedure provides: ''The following persons cannot be witnesses. 1. Those who are of unsound mind at the time of their production for examination.''

We think that the ability of a person to properly handle and manage his business and property is but remotely indicative of his mental soundness. True, in passing upon the question of mental soundness, the fact of an adjudged incompetency would be relevant to the inquiry; but, standing alone, would not conclude the matter. No other evidence on the question of mental capacity of Baker was offered. From the record before us, with particular reference to the examination of the witness Baker, we think that the court below exercised its discretion wisely in permitting Baker to testify. In *People* v. *Harrison*, 18 Cal. App. 295 [123 Pac. 200], it is said: ''The law fixes no standard whereby to measure the competency of a witness alleged to be of unsound mind, and therefore the determination is almost wholly within the discretion of the trial judge. Indeed, we have been unable to find any decision where such ruling has been disturbed.''

The subdivision quoted from section 1880 of the Code of Civil Procedure has received construction in *People* v. *Tyree,* 21 Cal. App. 707 [132 Pac. 784]. Many cases are reviewed therein and the conclusion reached agrees with the foregoing. We find no merit in appellant's claim of error on this issue.

■ During the examination of a witness called by the accuser, the witness stated he could not remember certain incidents, as the events occurred some two years back. He

was then asked if he had not made and signed and verified an affidavit concerning these incidents at a time when the same were fresh in his memory. On his affirmative reply he was pemitted to look over and read the affidavit referred to for the purpose of refreshing his memory. The record before us does not show the contents of this affidavit. In any event we feel the situation is well covered by the case of *People* v. *Durant,* 116 Cal. 213 [48 Pac. 75], as also *People* v. *Selby,* 198 Cal. 431 [245 Pac. 426].

The next point is that the court permitted one Oscar Collins, a witness on behalf of accuser, to testify after the said Collins was shown to have been present in the courtroom during the examination of other witnesses, notwithstanding the court's order at the commencement of the trial that all witnesses be excluded from the courtroom until called. The record discloses the fact to be that said Oscar Collins, though not actively conducting the proceeding, was entered of record as one of the counsel for the accuser. We think any attorney of record does not come within the rule, generally, and if any serious harm could have resulted from the court's action here, it is not shown. From the record before us, we find nothing in the claims of appellant save the claim that, because Collins was attorney for Baker and chief instigator of the proceeding, he came within the rule. The argument falls of its own weight.

Finally the appellant contends that the evidence is insufficient to support the judgment. This contention is that we, as a court of review, should practically retry the case upon the evidence before us—that we should determine the credibility of witnesses and the weight of the testimony as a matter of original jurisdiction, and disregard the judgment of the lower court. This we decline to do. There is nothing in the nature of a proceeding of this character that alters the general rule (*In re Morton,* 179 Cal. 510 [177 Pac. 453]; *In re Wharton,* 114 Cal. 367 [55 Am. St. Rep. 72, 46 Pac. 172]; *Matter of Danford,* 157 Cal. 425 [108 Pac. 322]; *In re McGowan,* 177 Cal. 93 [170 Pac. 1100]; *In re Morganstern,* 61 Cal. App. 702 [215 Pac. 721]). Following the doctrine of the cases cited, we limit our inquiry to the determination of the existence of facts sufficient to uphold the judgment regardless of the conflict, qualifying this,

however, to the extent that we regard only a real conflict as distinguished from one merely apparent.

There was substantial evidence before the court which, if credited, showed this state of facts: Steve Baker was a Slavonian farmer of limited knowledge of business transactions and no knowledge of legal procedure. He had agreed to purchase from Phoenix Fruit Company a certain tract of land for the sum of $78,000, payable in yearly installments, and the last payment due some years hence. On this contract and in expenses incidental to the farming of the land, he had outlayed some $18,000 at most. In March of 1923 Baker had come to the conclusion that his venture was not a profitable one and that he could not pay out on it. As he was the owner of other lands, he feared that out of his undertaking a liability might arise that would involve his other holdings. He already had counsel, but he was advised to consult Mazuran, being told that the latter was an attorney of his own nationality and speaking the same language and a man of unusual attainments and legal ability, as the accused here modestly admits he is. Incidentally the property owned by Baker, aside from that under contract, would be of a valuation of about $50,000 at most, and then encumbered with a mortgage in the sum of $20,000. Baker accordingly met Mazuran and explained the situation to him regarding the Phoenix Fruit Company contract, and the relationship of attorney and client was shortly thereafter formed. Mazuran, the accused, then convinced Baker that the Phoenix Fruit Company contract could be set aside and suggested a suit to that end, of which Baker did not approve and particularly sought to avoid. Mazuran thereupon secured from Baker a contract of employment as alleged in the complaint (hereinbefore related) to perform all legal services necessary for Baker for an agreed price of $25,000, and caused Baker to make and deliver to him a note for that amount secured by mortgage on his own property, also advising Baker to make a gift deed to a niece of Baker's, subsequent to the mortgage of the real estate exclusive of the Phoenix Fruit Company lands. At the time Baker also paid to Mazuran the sum of $1,200 in cash and at other times an additional amount of $300. During these proceedings Baker advised the accused that he had other counsel and suggested

a conference. Mazuran dissuaded him from this and convinced him that the other counsel would not give him the fullest service if they had not already betrayed him. Within a short time thereafter Baker did receive independent advice, and sought to repudiate the agreement and cancel the note and mortgage, and engaged counsel for that purpose. Then Mazuran again convinced Baker of the jeopardy attaching to his rights and had the proposed action deferred, at the same time stating that for the sum of $10,000 he would cancel the entire matter. Thereafter and while a controversy still existed Mazuran made an attempted assignment of the note and mortgage and was instrumental in having the assignee commence action for foreclosure. The assignment so made was not in good faith and was part of a plan and enterprise to cut off any alleged defense of Baker. It was further in evidence that there was no real controversy between Baker and the Phoenix Fruit Company, and that whatever difference or dispute might have arisen between them had been satisfactorily adjusted prior to the advent of Mazuran, which facts the accused could readily have learned. It also appears that the reasons given Baker in the securing of the mortgage were to the effect that, by divesting himself of all assets, no creditor could get the same on execution or otherwise. After Mazuran became aware that the Phoenix Fruit Company matter had been closed satisfactorily to Baker, he still refused to dismiss a suit he had instituted on behalf of Baker against that company, and became so indignant that he threatened the attorney for the Phoenix Fruit Company with disbarment proceedings on the ground of the latter's unethical tactics in dealing directly with Baker. The record discloses that Mazuran never did dismiss the action, but that a dismissal followed only after a substitution of attorneys under order of court in the guardianship proceedings.

We think these facts sufficient to support the judgment.

Lastly, appellant contends that, if it is shown that the securing of the note and mortgage from Baker was with intent to defraud the creditors, then Baker was an accomplice, and his testimony lacking sufficient corroboration should be entirely disregarded. In other words, if an attorney advises an illiterate and ignorant client to commit a wrong, the attorney should be exonerated if the advice

is followed. This last stand seems more like a confession than a contention. The accused was being tried for what he did and not for what Baker did or what Baker wanted the accused to do. If Baker had plans not measuring up to a high moral standard, it surely was the duty of accused as an attorney to set him right and not to aid in the consummation of any plan of Baker of this nature. It is possible that a case may arise wherein it would be held that one was an accomplice within the meaning of section 1111 of the Penal Code, and require corroboration even in a disbarment proceeding. The present case does not warrant such a conclusion.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 8, 1928.

All the Justices concurred.