## OVID SUTHERLIN V. STATE OF NEBRASKA.
### 287 N. W. 614
#### FILED SEPTEMBER 22, 1939.  No. 30651.

*Joseph E. Daly* and *Earl T. Knowles,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ., and LANDIS, District Judge.

JOHNSEN, J.

Ovid Sutherlin, who will be referred to herein as the defendant, was convicted of forgery and brings error.

The information charges that he forged the name of B. F. Sutherlin, as maker of a $5 check. B. F. Sutherlin was his uncle. The check was drawn on the DeLay National Bank, of Norfolk, Nebraska, in favor of "Coast to Coast Store," of Fremont, Nebraska, which cashed it for defendant. It was returned by the bank, not on the ground of forgery, but with the notation, "Has no account."

Defendant claimed that his uncle had authorized him to draw the check. B. F. Sutherlin admitted the authorization. The state, however, contended that the authority did not exist.

At the close of the state's case, defendant moved for a dismissal, on the ground that the evidence was insufficient to sustain a conviction. The trial court overruled the motion, and this ruling presents the principal question of the appeal.

In order to establish a forgery, the state had the burden of proving that defendant signed B. F. Sutherlin's name without authority. *Brown v. State,* 115 Neb. 325, 212 N. W. 625; *Taylor v. State,* 114 Neb. 257, 207 N. W. 207. Since direct testimony to show the lack of such authority could not be produced, the state was obliged to rely on circumstantial evidence. Such evidence then had to be weighed carefully by the trial court, to see that the circumstances proved would not merely arouse a suspicion of guilt, but that they were of such a nature and relationship as to entitle a jury fairly to hold them inconsistent with any reasonable hypothesis of innocence. *Robino v. State,* 133 Neb. 391, 275 N. W. 463; *Vinciquerra v. State,* 127 Neb. 541, 256 N. W. 78.

The evidence relied upon by the state shows that defendant came to the "Coast to Coast Store," in Fremont, on Saturday afternoon, October 29, 1938, and asked for price quotations on some paint. After comparing these with a pocket memorandum, he told George D. Foote, one of the proprietors, that the prices were favorable and that he would call for fifteen gallons the following Monday morning.

He then asked Foote if he could get a check cashed. He produced an instrument, which Foote thought was a check for $750, and which Foote promptly declared he would be unable to cash. Defendant then inquired if Foote would cash one for $7.50 to $15 in amount. Foote replied that he might consider cashing one for $5 or $6 and filled out a counter check for $5 after defendant gave him the name of the bank on which it was to be drawn. Defendant then signed the name of B. F. Sutherlin as maker. He did not state that he was B. F. Sutherlin, nor did Foote make any inquiry as to his name.

Foote did, however, ask defendant where he lived and

was told Pierce, Nebraska. He inquired also whether defendant had ever lived in Fremont, but defendant was somewhat evasive and merely stated that he had been through Fremont many times on a truck. Defendant, as a matter of fact, was living in Fremont and had been employed a short time previously at the Montgomery Ward & Company store there. Foote admitted on the witness-stand that he had seen defendant working at this store, but stated that he did not remember such fact at the time.

When the check was returned to the Coast to Coast Store by the bank, marked "Has no account," Foote placed it in the hands of the county attorney, who signed and issued a complaint for forgery and had defendant arrested at his home in Fremont. The deputy sheriff who made the arrest testified that, when he asked defendant whether he wrote the check, defendant replied that his uncle had given it to him.

The state proved further that, at the time the check was drawn, B. F. Sutherlin had no active account at the DeLay National Bank. He had carried a small checking account there in March and April, 1937, but it had been inactive from April 27, 1937, to January 9, 1939. The assistant cashier of the bank testified that, if defendant was authorized to draw checks on the account prior to January 9, 1939, such authority ought to appear on the bank's records. The bank, however, could not produce its signature card and it had no other record of the signatures authorized to draw upon the account, nor did the witness purport to have any independent knowledge or recollection.

On January 9, 1939, B. F. Sutherlin reopened the account with a $50 deposit, and the bank at that time required him to execute a new signature card. He did so and had defendant sign the card also, so that by merely writing B. F. Sutherlin's name defendant could draw on the account, up to $20 in amount.

While we are concerned at this point solely with the sufficiency of the foregoing evidence to establish that defendant signed B. F. Sutherlin's name without authority and to

warrant the trial court in allowing the jury to pass on his guilt as a forger, it may be interjected in passing that B. F. Sutherlin never had claimed that the instrument was a forgery, and that he at all times asserted that he had given defendant authority to draw the check. On the witness-stand for defendant, he testified that, some time previously, defendant had loaned him $26, on which he made a payment of $6 about October 1, 1938, at Sioux City, Iowa. He testified further that he told defendant at the same time that he was expecting to move back to Norfolk in two or three weeks and would reopen his account at the DeLay National Bank, and that defendant could draw $5 or $10 a month out of the account, until the indebtedness was cleaned up, by issuing checks in the witness' name. He claimed that he had been delayed in leaving Sioux City and in reopening the account by some injuries which he thereafter sustained.

It may be added also, as a matter of passing interest, that defendant's testimony showed that he had formerly lived in Pierce, Nebraska; that the paint on which he was seeking prices was to have been purchased for another uncle who was then living near Pierce; that he never returned to the Coast to Coast Store for the paint because his father advised him the same evening that other arrangements had already been made. He testified also that the $750 check which he showed Foote represented the down payment on a farm which his father had sold for the John Hancock Life Insurance Company, and which his mother had asked him to deliver to his father.

But, returning to a consideration of the question which the trial court was required to pass upon at the close of the state's case, it is our view that the circumstantial evidence on which the state relied to prove a forgery was insufficient to permit the jury to find that defendant signed B. F. Sutherlin's name without authority, and that defendant's motion to dismiss should have been sustained.

Defendant may have issued and cashed a check which he had reason to believe was worthless. He may have succeeded in getting the instrument cashed by leading Foote

to believe that his name was B. F. Sutherlin. These circumstances, however, would not sustain the present conviction. This is not a prosecution for making or uttering a worthless check or for obtaining money under false pretenses. No matter how worthless defendant may have known or had reason to suppose his uncle's check to be, and no matter how carefully he may have concealed his own name from Foote, he still was not guilty of forgery, if he had authority to sign his uncle's name.

On the evidence produced by the state, we do not feel that the jury were entitled to put the felon stamp of a forger on this twenty-one year old defendant. After all, it must be admitted that there is at least a bit of anomaly in accusing one of forging the name of another where the latter, not as an obviously belated condonation, but from the very start, asserts that the authority to sign his name at all times existed.

The trial court should have sustained defendant's motion to dismiss at the close of the state's evidence.

REVERSED AND DISMISSED.