[Crim. No. 5383. Second Dist. Div. Two. Nov. 18, 1955.]

THE PEOPLE, Respondent, v. ELLEN BROWN, Appellant.

Henry Grivi for Appellant.

Edmund G. Brown, Attorney General, and James C. Maupin, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of six counts of forgery of endorsement of checks. (Pen. Code, § 470.) She demands a reversal of the judgment on the grounds of (1) insufficiency of evidence to the effect that she had no authority to endorse the payee's name; (2) insufficiency of proof of intent to defraud; (3) prejudicial error in sustaining "objections by People to questions on cross-examination of Mary Hile," the payee of the checks. She also appeals from the order denying motion for new trial. The judgment ordered appellant to be imprisoned in the county jail, the sentences to run concurrently for one·year.

Ellen Brown, a widow, was employed by Mary Hile and her husband, Harvey, in 1951 for compensation on a daily basis. Soon thereafter, the Hiles employed her to reside in their home and take care of them for the rest of their lives in return for a remainderman's interest in their home. They delivered her an agreement on the bases proposed and Harvey executed a will bequeathing a life estate to his wife, and at her death his share to go to appellant. To that plan Mary agreed. The accused performed her promises through the last illness of the husband prior to October 2, 1951, and continued to serve the widow. In December, 1952, Mary deeded the home to appellant, reserving a life estate. In April, 1954, Mrs. Hile visited a friend at Lake Elsinore. Thence, she was taken by her grandniece, Hazel Hahn, to visit the latter's mother at San Bernardino.

In July, 1954, a complaint was filed by the district attorney accusing appellant with three forgeries and a grand theft involving some of the checks in evidence in the instant action, and the deed of Mrs. Hile to appellant in December, 1952. At the hearing of the matter, the municipal court dismissed the complaint for the reason that Mrs. Hile could not deny that the endorsements on the checks were her own, but "it looks like my writing." On September 7, 1954, the indictment of appellant on seven counts of forgery was filed in the superior court.

1.

 Mrs. Hile as a witness before the grand jury testified in September that she never, at any time, authorized anyone to sign her name on the backs of the checks involved in this action. At the trial of the cause in the superior court, Mrs. Hile testified that she never gave appellant permission or authority to sign any documents of any nature whatsoever. Notwithstanding such testimony, appellant regales us with the extended cross-examination of Mrs. Hile whereby it is shown that she had a very poor memory of events of the preceding two years; could not recall the case against Ellen Brown in the municipal court, or that Mrs. Brown had been charged with theft of the witness' home, or that she had been in court in July, 1954; that she had no recollection of having appeared before the Los Angeles County grand jury. In respect to numerous other matters, Mrs. Hile had no memory, and by reason thereof, appellant would have this court weigh Mrs. Hile's testimony and determine that because she was 83 years of age and had a poor memory concerning recent events, the finding of appellant's guilt should be set aside.

Such contention is without legal support. Mrs. Hile was clearly emphatic that she did not endorse her name on the several checks involved; did not authorize appellant to endorse "Mrs. Hile" or "Mary Hile" on any check. The evidence shows that the $25 check (count I) payable to Mrs. Hile was paid to appellant through the teller, Mrs. Hudson, at the Bank of America, September 4, 1953; that the $25 check (count II) was paid to appellant by a teller of the Bank of America; that the check for $4.80 dated January 25, 1954 (count IV), payable to Harvey Hile was endorsed "Harvey Hile," "Mary Hile," "Mrs. Ellen Brown," and stamped "J. T. O'Neill." Don Mire, the expert on questioned documents, testified that both "Harvey Hile" and "Mary Hile"

had been written by appellant as determined from comparison with a specimen of her penmanship; that the check for $1.50 by the American Trust Company (count V) payable to Mrs. Mary Hile bore the endorsement of that lady in the handwriting of appellant; that the check for $50 (count VI) in favor of Mrs. Mary Hile drawn on American Trust Company by Associated Cooperatives, was cashed at the Citizens National Bank March 5, 1954, that the endorsement of "Mrs. Mary Hile" was made by appellant; that the check drawn by Associated Cooperatives, Inc., on American Trust Company for $160 (count VII) in favor of Mrs. Mary Hile bears the endorsement of the payee in the handwriting of appellant. Appellant denied having signed Mrs. Hile's name on any check; insisted that while Mary asked her several times to do so, but "as far as I know I never signed a check. . . . I tried to make her reliant on herself. Mrs. Hile never did one thing for herself. . . . She said, 'Ellen, Harvey wanted you to have the checks and you have to help me sign them,' which I did."

Appellant's rehearsal of her own testimony in detail can serve no useful purpose here. It was weighed by the trial court along with the evidence on behalf of the prosecution and the ultimate fact of her guilt was determined by that tribunal. That appellant had no authority to endorse Mrs. Hile's name on the checks was proved by the emphatic testimony of Mrs. Hile. That the forged endorsements are in the handwriting of appellant was established by the positive testimony of an expert on questioned documents. That each of the checks was of the value evidenced by its face is not disputed. ██ When a trial court has found the defendant guilty and the finding is supported by substantial evidence, the reviewing court is powerless to reverse the judgment by reason of the sworn denials of the accused. ██ We cannot reweigh the evidence. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ██ Mrs. Hile's testimony that she did not authorize appellant to endorse her name on the checks is substantial evidence and is sufficient to support the implied finding of lack of authority in appellant. (*People* v. *Kabakoff*, 45 Cal.App.2d 170, 173 [113 P.2d 760]; *People* v. *Braun,* 14 Cal.2d 1, 5 [92 P.2d 402].)

Appellant's authorities with respect to lack of authority (*People* v. *Maioli,* 135 Cal.App. 205 [26 P.2d 871]; *People* v. *Cullen,* 99 Cal.App.2d 468 [221 P.2d 1016]; *Kiekhoefer* v. *United States Nat. Bank,* 2 Cal.2d 98 [39 P.2d 804, 96 A.L.R.

1244]; *Sutherlin* v. *State*, 136 Neb. 809 [287 N.W. 614]) are not persuasive. The Maioli decision holds that to prove lack of authority to sign a check the testimony of him whose name was forged is necessary. The Kiekhoefer case is clearly distinguishable. The party accused of grand theft by forging the checks involved had a general power of attorney to act for the alleged victim. In *Sutherlin* v. *State,* the uncle whose name was allegedly forged had authorized the boy to sign the check.

### 2.

Appellant contends that there was no proof of a fraudulent intent in her endorsing Mrs. Hile's name on the checks. But there was evidence of her intention to defraud her benefactress. She endorsed the checks without authority and that implied an intention to defraud. (*People* v. *Platt,* 124 Cal.App.2d 123, 134 [268 P.2d 529].) She used the proceeds for herself; she neither made an accounting to Mrs. Hile nor spent the moneys for the lady's benefit. She positively denied to the investigator for the district attorney that she had signed Mrs. Hile's name on any check. The handwriting expert testified that the endorsements would not have been produced by appellant's holding the arm of Mrs. Hile. Also, appellant's guilty purpose in endorsing Mrs. Hile's name was indicated by her failure to endorse any government check payable to Mrs. Hile. Her explanations were: (1) She would avoid trouble with the government and (2) she wished to make Mrs. Hile self-reliant. She testified that she borrowed some of the money that came from the checks from Mrs. Hile. Furthermore, the greed of appellant and her zeal to impose upon Mrs. Hile was evidence of her fraudulent purpose in taking the money. While there to take care of the aged couple for which they were to give her a remainderman's interest in their home, she began to operate there a home for elderly women. She had four boarders at one time paying from $60 to $100 monthly, besides her own two sons, and kept all the income for herself. If intent to defraud is an essential element of the crime of forgery (*People* v. *Platt, supra,* 134; *People* v. *Horowitz,* 70 Cal. App.2d 675, 687 [161 P.2d 833]) the guilt of appellant is augmented by the evidence of her zeal to deprive her friend of property rights which neither Mrs. Hile nor her aged spouse ever intended to grant to her. *People* v. *Crowder,* 126 Cal.App.2d 578 [272 P.2d 775], is not support for appellant's thesis. When Mr. Crowder drew a check on Mrs.

Crowder's account, the couple were living together. He had no intention of cheating her but used her small sums of money for family expenses. Finally, although at all times prior to the trial appellant constantly denied having written Mrs. Hile's name on any check, yet in giving her testimony in court she confessed that she had held Mrs. Hile's arm as the lady was endorsing the checks described in the indictment.

Appellant contends that intent to defraud must be proved affirmatively, citing *People* v. *Russell*, 90 Cal.App. 266 [265 P. 826]. No court would hold otherwise. But such proof may consist of reasonable inferences drawn from affirmatively established facts.

### 3.

■ Appellant claims to have been prejudiced by the court's rulings in sustaining objections to the cross-examination of Mrs. Hile. Such rulings were not erroneous. Her direct examination was for the single purpose of proving that the witness had never authorized appellant to sign Mrs. Hile's name to any document. The cross-interrogatories were designed for, and directed to, the establishment of the defense by showing that appellant assisted the witness in signing the latter's name on the checks. Such procedure is violative of the rule that a party who has not yet offered evidence for his own cause may not, under the guise of cross-examination, inquire of the witness as to matters not relevant to the subject of the direct examination. (*People* v. *Donnolly*, 143 Cal. 394, 399 [77 P.177]; *People* v. *Dole*, 122 Cal. 486 [55 P. 581, 68 Am.St.Rep. 50]; 27 Cal.Jur., § 77, p. 101.)

■ Appellant claims that she was prejudiced by the court's allowing Mrs. Hile to testify that she never gave appellant authority to sign any document for her instead of requiring the witness to answer as to each count. On the contrary, the method pursued was correct. If appellant was displeased with a general denial that the witness had ever given appellant such authority, it was incumbent upon appellant to cross-examine as to each count.

The court denied appellant's motion for a dismissal of the action at the conclusion of the People's case on the ground that not all the elements of the corpus delicti had been proved. Such ruling was correct. The recitals above dispose of such contention.

■ Finally, appellant advances the claim that error was committed by the court's denial of her motion for a new trial on the ground of newly discovered evidence. The new

evidence referred to was that a guardian had been appointed for Mrs. Hile September 14, 1954. In the first place, such fact was a public record and therefore known to appellant. Secondly, guardians are appointed for persons of advanced years, or for those likely to be deceived by designing persons (Prob. Code, § 1460.) Hence, such fact of the guardianship did not, of itself, establish Mrs. Hile's incompetency. At any rate, she was before the court to give her testimony and her powers of memory, recall, accuracy of perception and reasoning were exposed to the trial court. The court was enabled to determine the capacity of the witness and there is no showing of abuse of its discretion. Even an insane person may be a witness where he has sufficient understanding of the obligation of an oath. (*People* v. *Tyree*, 21 Cal.App. 701, 706 [132 P. 784].) Whether a witness was insane at the time of the occurrence referred to in his testimony goes to his credibility, not to his competency.

Judgment and order denying motion for new trial affirmed.

McComb, J., and Fox, J., concurred.