[Crim. No. 8886.   Second Dist., Div. One.   Aug. 5, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. KAY FRANCES SUCIU, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Morris Schachter and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction on three counts of forgery.

In an information filed October 23, 1962, in Los Angeles County the defendant was charged in Count I with forgery in that she did on or about September 5, 1962, forge a check

for the payment of $60 and did then utter the same knowing of the falsity of such check with intent to cheat Madeline Cernelli, Edward Suciu (her husband) and Bank of America; in Count II she was similarly charged, the date of the offense being on or about September 9, 1962, the check being in the sum of $25, and Earle McDonnell being the person to whom it was passed. In the third count the charge was similar to the first two counts, the date of the offense being on or about September 5, 1962, the amount of the check being $24.93 and the person to whom she uttered the check being Don Ramsell. It was later further charged in the information that she formerly had been convicted in the federal court of a violation of the Dyer Act, a felony, and had served a term in a federal prison therefor.

She was represented by the public defender and pleaded not guilty and denied the prior conviction. A jury trial was waived. Defendant was found guilty as charged. A certified copy of the proceedings with reference to the prior conviction was introduced into evidence without objection by the prosecution which conclusively shows that defendant was convicted in the federal court (upon a plea of guilty) of the crime of violating the Dyer Act in 1960 and was placed on probation and that subsequently thereto, because of a violation of the terms of probation, such was revoked and she was thereupon placed in the custody of the Attorney General for supervision under the Federal Youth Correction Act. Her counsel asked her on direct examination whether she had been convicted of a violation of the Dyer Act in federal court and whether she had been confined to a correctional institution on account thereof and her answer was in the affirmative. She made substantially the same answers to questions put by the prosecuting attorney with reference to such prior conviction. The judge, however, in spite of what had been produced and testified to made no finding as to the truth or falsity of such charge of a prior conviction.

A résumé of some of the facts as set forth in the reporter's transcript is as follows: Edward Suciu married appellant on October 12, 1961, and during the times with which we are concerned Edward and appellant were husband and wife. They separated on or about July 3, 1962, reconciled for a short time during the early part of August and separated finally on August 15, 1962. On about September 5, 1962, appellant presented to Madeline Cernelli, a bookkeeper at a restaurant, a check drawn on the Bank of America, Midway Center

Branch, dated September 5, 1962, for $60 and purportedly bearing the signature of Edward C. Suciu. At the time of presenting the check appellant told Mrs. Cernelli that the check was for alimony. Appellant was paid cash in exchange for the check.

On or about September 9, 1962, appellant presented to Earle McDonnell, an employee in a liquor store, a check drawn on the Bank of America, Midway Center Branch, dated September 9, 1962, for $25, and purportedly bearing the signature of Edward C. Suciu. At the time of presenting the check to McDonnell, appellant told him that her husband had gone away and had left her the check for spending money. McDonnell gave appellant cash in exchange for the check.

On or about September 6, 1962, appellant presented to Donald E. Ramsell, a Sears' store employee, a check drawn on the Bank of America, Midway Center Branch, dated September 6, 1962, for $24.93 and purportedly signed by Edward C. Suciu. Ramsell gave appellant a pair of shoes in exchange for the check.

An officer of the bank testified to the effect that the account numbers on the checks corresponded to the ledger account number of Mr. Suciu's account and that it appeared from such ledger account that Edward C. Suciu's signature was the only authorized signature for withdrawal of funds from that account. The account was overdrawn and showed on its face that never at any time during the period in question was there over $100 in the account.

An examiner of questioned documents stated in effect after examining the handwriting of appellant and of Mr. Suciu that it was his opinion that appellant had forged the name of Mr. Suciu to the checks.

A deputy sheriff stated that he had talked with appellant at and after the time of her arrest and she had in effect admitted that she had signed her husband's name to the checks, that she knew she was forging his name, that she had no permission or authority to sign his name and further that she had cashed about $1,400 of such checks. The deputy sheriff had appellant write out a list of the names and places where she had cashed such checks, however this list totaled something less than $700. Appellant also told the officer that she knew the checks would not be honored.

Appellant now asserts that the corpus delicti of the crime of forgery was not established because (1) the account was a

community property account, (2) the evidence was insufficient to establish that she had any intent to defraud and (3) the evidence was insufficient to establish that she lacked authority to sign the forged checks. Further that the facts as related cannot as a matter of law constitute forgery.

In *People* v. *Battle,* 188 Cal.App.2d 627, 631 [10 Cal. Rptr. 525], it is stated: "There is authority to the effect that there are four basic elements to the offense of forgery, namely: (1) that the defendant issued and passed a forged and counterfeit document, knowing it was forged and counterfeit; (2) that the person whose name is alleged to be forged is a real person; (3) that his name as signed to the instrument was not his signature; and (4) that the signature was placed on the instrument without his authority and the check was a false instrument. [Citing cases.]"

There is ample evidence in the record to demonstrate that appellant knew the checks were false and that she passed the same with the intent to defraud. She further knew that she had no authority to sign the name of her husband under the circumstances. See also *People* v. *Horowitz,* 70 Cal.App.2d 675, 687 [161 P.2d 833].

In *People* v. *Cullen,* 99 Cal.App.2d 468, 472-473 [221 P.2d 1016], it is set forth: ". . . The rule is that to authorize the reception and consideration by the jury of evidence of an extrajudicial confession or admission of a defendant, it is not required that the prosecution establish the corpus delicti by proof of a clear and convincing character, as is required to support a conviction. Slight proof is all that is required. *Slight evidence is sufficient where an attempt to prove a negative is being made.* [Citing cases.] In *People* v. *McWilliams, supra* [117 Cal.App. 732 (4 P.2d 601)], it was held that under a charge of issuing a fictitious check the city directory was sufficient evidence to show there was no such individual as the person whose name was signed to the check . . . *It is not necessary to be proven by evidence of the owner or maker of an instrument that authority was not given. In the absence of such owner or maker as a witness, lack of authorization may be proven circumstantially.* [Citing cases.]" (Italics added.)

There was more than slight evidence in this case to show that the account was in the sole name of Edward Suciu and that appellant had attempted to imitate his handwriting. See also *People* v. *Mehaffey,* 32 Cal.2d 535, 545 [197 P.2d 12].

Furthermore, she gave false and evasive explanations of why she had so signed the checks and she appropriated the money to her own use. It is quite apparent that she intended not only to defraud her husband but also the members of the public including the various merchants and the bank.

▇ Appellant now seems to argue that the account was a community property account and therefore she was entitled to forge her husband's name to his printed checks. There is no merit to the contention. The very case which appellant cites as authority for such a position, *People* v. *Crowder*, 126 Cal.App.2d 578 [272 P.2d 775], states among other things at page 585: ''. . . The fact that the bank account was community property did not give defendant the right to sign his wife's name to checks but it had a most significant bearing upon his motives. If defendant had made off with community funds under circumstances which indicated that he intended thereby to cheat and defraud his wife of her community interest therein an entirely different question would have been presented.''

As heretofore indicated appellant places great reliance on the *Crowder* case but a thorough reading of that case shows that there evidence to support the holding of the required specific intent to defraud was lacking, whereas in the case at bar the evidence is clear that appellant did intend to and did in fact defraud the members of the public and her husband. See also *People* v. *Russell*, 90 Cal.App. 266, 267 [265 P. 826], and *People* v. *Van Skander*, 20 Cal.App.2d 248, 253-254 [66 P.2d 1228].

▇ It is also asserted in effect that because some of the funds so secured from her forgeries were used for the furnishing of necessities which her husband was obligated to furnish that she is therefore not criminally responsible for such acts of forgery. Whatever the obligations may have been from the husband to the wife she is not at liberty to bilk the public any more than she could commit robbery to enforce her rights against her husband.

▇ She signed her husband's name without authority or permission and she knew the checks in all probability would not be covered and she told untruths to the persons to whom she submitted such checks for cashing. ▇ The mere fact of the forgery itself is some evidence of an intent to defraud. See *People* v. *Chapman*, 156 Cal.App.2d 151, 158 [319 P.2d 8]; *People* v. *Horowitz*, 70 Cal.App.2d 675, 687 [161 P.2d 833]; *People* v. *Weitz*, 42 Cal.2d 338 [267 P.2d 295].

■   Appellant lastly argues that the evidence was insufficient to establish that she had no authority to sign the checks. It is true that at one place in the record she did testify that she thought she had authority to so sign such checks, however she also testified that she "knew [her] husband would press charges sooner or later" and that "the law" would be after her.   She told the officer that she did not have authority to sign her husband's name and admittedly she disguised her writing.

Under the circumstances in this case the court directed under the Rules on Appeal that the original record be brought before this court.   We have read it.   Suffice it to say that the appellant was properly and fairly tried and sentenced.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.