[Civ. No. 1989. Third Appellate District.—May 20, 1919.]

## C. C. MITCHELL, Respondent, v. EXCELSIOR WATER AND MINING CO. (a Corporation), Appellant.

[1] NEGLIGENCE — DEATH OF PASTURED CATTLE — OVERSTOCKING OF RANGES—ACTION FOR DAMAGES—EVIDENCE—PREJUDICIAL ERROR.— In an action for damages for the death of livestock which had been delivered to the defendant's ranges for the purpose of being pastured, due to the alleged negligence of the defendant in failing to furnish them with proper food and shelter, it was proper cross-examination to ask the stock foreman of the defendant, who had had an experience of more than five years in that work, and who was called as a witness for the plaintiff, whether the ranges were over-stocked, where on direct examination he had been asked how many cattle were kept on the defendant's ranges at the time referred to; but the rulings of the court foreclosing answers to the questions were without prejudice where both the defendant and its foreman · had stated in letters to the plaintiff that there was not sufficient herbage produced on the ranges to supply his cattle with feed necessary to their proper sustenance.

[2] ID.—MATTERS OF DEFENSE—FAILURE TO OFFER EVIDENCE.—While the defendant in such action was entitled to show, if it could, that the ranges were not overstocked, and that there was sufficient feed growing on the ranges to supply in proper measure all the cattle grazing on said ranges, and that the death of certain of the cattle of plaintiff was due to some other cause than that of starvation or want of sufficient feed, yet such facts were peculiarly matters of defense, and where it made no effort to prove such facts in its defense, it was not prejudiced by the action of the trial court in excluding such matters on cross-examination of one of plaintiff's witnesses on the ground that the proper foundation had not been laid and that it was not proper cross-examination.

[3] APPEAL—PREPONDERANCE OF EVIDENCE—VERDICT OR FINDINGS CONCLUSIVE.—Whenever the question is raised on appeal as to the side on which the evidence preponderates, and there is testimony supporting the conclusion of a jury or the findings of a trial court, which testimony is not inherently improbable, the answer must always be that the jury or the trial court has conclusively decided the question.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. F. Metteer and W. H. Carlin for Appellant.

James Snell and Edward B. Stanwood for Respondent.

HART, J.—Plaintiff in his complaint alleged, in effect, that, in the fall of 1916, he delivered 188 head of horned cattle and one horse to defendant upon defendant's ranges near Smartsville, in the county of Yuba, for the purpose of being pastured during the winter of 1916–17; that after receipt of the animals, defendant negligently and carelessly failed to furnish them with proper food and shelter, and because thereof, the horse and fifty-nine head of cattle died, and others of the animals were lessened in value, and as a result thereof plaintiff was damaged in the sum of seven thousand four hundred dollars.

Defendant by its answer admitted the receipt of certain animals from the plaintiff for the purpose of pasturage for a consideration, but denied any negligence or carelessness on its part, denied any damage suffered by plaintiff, and denied that any of the animals died because of any carelessness, negligence, or want of proper care on defendant's part.

The cause was tried before a jury, which rendered its verdict in favor of plaintiff for the sum of two thousand dollars. Judgment was entered on the verdict, defendant made a motion for a new trial, which was denied, and prosecutes this appeal from the judgment.

Appellant concedes that there was a conflict in the testimony which the jury resolved in favor of plaintiff, and concedes that the cattle which died were undoubtedly worth the amount found by the jury.

The only question presented for our decision is as to certain rulings of the court in sustaining objections of plaintiff to two questions. asked by defendant on cross-examination of R. E. Colling, stock foreman for defendant, who was called as a witness on behalf of plaintiff. The record on this point is as follows:

"Defendant's Counsel: Q. Mr. Colling, you have been asked about the number, taken under ordinary conditions, that range during the winter of 1916–17 was not overstocked, was it?

"Mr. Snell: The witness is not qualified to answer that.

"The Court: Make your objection.

"Mr. Snell: We object on the ground there is no foundation for the introduction of this evidence; and it is not proper cross-examination.

"The Court: Sustained.

"Mr. Carlin: Q. It is not a fact that there was ample feed on that range to feed all that stock?

"Mr. Snell: We object on the ground that it is not proper cross-examination, and the proper foundation has not been laid for the introduction of this evidence.

"The Court: Sustained."

From the testimony introduced by plaintiff, it appears that, for several years prior to the year 1916, he pastured stock on the ranges of the defendant; that, in the months of October and November of the year 1916, he sent to the defendant's ranges certain numbers of cattle for the purpose of pasturing them thereon, under a previously made agreement with the defendant. These cattle were taken to said ranges for the plaintiff by one Josiah Sherman, who testified that, on taking said stock to said ranges, he said to one R. E. Colling, stock foreman of the defendant, that he (Colling, acting for defendant) was to *feed* the cattle in case it became necessary to do so—that is to say, the defendant was to feed the cattle hay if the pasturage became short and inadequate for that purpose; that he "asked him [Colling] what the charge would be if the cattle were fed off his hay; he said ten cents a day." Sherman then said to Colling: "Any cattle it is necessary to feed, give it to them and present your bill to Mr. Mitchell. That was my instructions."

It further appears from the testimony that on the defendant's ranges in the fall of 1916 there were pastured approximately one thousand six hundred head of cattle. The ranges embraced, approximately, three thousand five hundred acres of range lands, of which something more than four hundred acres were irrigated. The defendant also laid in an unusually large supply of hay in 1916 for the purpose of meeting the contingency of a cold and severe winter, the result of which, if it happened, would be a shortage of pasturage followed by the inadequacy of the range feed to supply the stock pastured thereon. It happened that, with the arrival of the first of the winter

months, cold north winds prevailed and they were followed by cold rains, sleet, and frosty weather, which continued into the month of February, 1917, with the result that the ranges became comparatively barren of feed or so short in that particular as to render them wholly insufficient to feed properly the large number of cattle then grazing thereon, the defendant being thereupon compelled to feed the stock from the hay with which it had provided itself for the purpose of meeting such a situation.

There is testimony that plaintiff's cattle, when delivered to Colling on the defendant's ranges, were in excellent condition, that later on, after having been on the ranges several weeks, they lost weight and were in bad condition, and that a number of them died. There is ample testimony to support the claim of the plaintiff, and the implied finding of the jury, that the death of the plaintiff's cattle was due to want of sufficient feed or nourishment.

The record further shows that, under date of January 1, 1917, Colling wrote as follows to plaintiff:

"Dear Sir: Just a few lines to notify you about your stock. I told your boy to tell you, but I thought he might have overlooked it. You have 3 dead ones now and if there isn't something done in the near future you will have a heavy loss for some of them are getting very thin and need hay very bad now and we haven't but very little hay and don't know whether we can get any more or not. Hoping to hear from you by return mail, I remain,

"Very respectfully,
"R. E. COLLING."

To the above letter the plaintiff replied, under date of January 3, 1917, and, among other things, said in his letter: "Anything that needs hay, feed them. That is the way they have always been taken care of down there. If I had knew you had no hay earlier in the season, I would have made a different arrangement. . . . "

Under date of January 4, 1917, the plaintiff addressed to said R. E. Colling a letter in the following language: "Do not let my cattle die for want of feed, as I sent them down to be well fed and taken care of; feed them, if necessary."

On February 1, 1917, the defendant, through its secretary, R. Beatty, sent to the plaintiff a letter of which the following is a copy: "You are hereby notified to remove

your stock placed on the lands of the Excelsior Water and Mining Company, for the reason that the pasture is insufficient, owing to unusual cold weather, for the past two months.''

[1] As supporting their contention that the court below committed prejudicial error in making the rulings of which they here complain and to which reference is hereinabove made, counsel for the appellant, in their brief, say: ''Plaintiff made Mr. Colling his witness, and throughout his testimony the court will see that persistent effort was made to show that the ranges were in fact overstocked. He was shown to be fully qualified as a witness to testify to the condition of the range. He was the range foreman in charge of all the stock; had an experience of more than five years in such work, and over one year on these very ranges. He knew the ranges thoroughly, knew the number of stock on the ranges, and had ample experience to qualify him to testify as to the capacity of the ranges to feed the stock placed therein during the pasturage or feeding season.''

We are inclined to think that, inasmuch as the plaintiff, on direct examination, asked Colling how many cattle were kept on the defendant's ranges at the time referred to, the questions constituted pertinent cross-examination. Nor do we think the questions called for expert testimony, within the strict legal concept of that phrase. While, of course, they invited the expression by the witness of his opinion of the matter to which they were addressed, they did not involve scientific inquiries or the elucidation of a subject beyond the competency of ordinary witnesses who have means and habits of observation. Colling's practical experience of several years as an agister or a foreman of a stock-grazing range undoubtedly qualified him to express a satisfactory opinion as to whether the ranges were overstocked at the times mentioned—that is, whether more cattle were taken and kept on the defendant's range lands than they, with respect to feed, were capable of accommodating in a sufficient or proper way. But, in view of the evidence received, the rulings foreclosing answers to the questions were without prejudice. As shown, both the defendant and its foreman stated in letters to the plaintiff that there was not sufficient herbage produced on the ranges to supply his cattle with feed necessary to their proper sustenance. It was

for that reason that the defendant notified the plaintiff to remove his stock from the ranges. It was so declared in express language in the letters from defendant and its agents to the plaintiff. The letter to the plaintiff from Colling, dated January 1, 1917, stated that some of the latter's stock had already died. As seen, there is testimony that the cattle of plaintiff, when taken to the defendant's ranges, were in robust physical condition, but that they began to fall off in weight within a few weeks after they were placed thereon. Upon this testimony, and that furnished by the letters mentioned, the jury could reasonably and justly have determined, and undoubtedly it did thus conclude, that the cause of the death of plaintiff's cattle was the insufficiency or shortness of the feed on the defendant's ranges. If the witness had been permitted to answer the questions and had said that the ranges were not overstocked, the fact would still have remained that the defendant expressly admitted that whatever the cause, there was insufficient feed upon the ranges to afford sufficient nourishment for the cattle. But there is still another consideration to which attention may well be directed in this connection. [2] The defendant, in making its defense, was entitled to show, if it could, that the ranges were not overstocked, that there was sufficient feed growing on the ranges to supply in proper measure all the cattle grazing on said ranges, and that the death of certain of the cattle of the plaintiff was due to some other cause than that of starvation or want of sufficient feed. The objection to the questions referred to was not upon the ground that they called for immaterial or irrelevant testimony, nor would such ground of objection have been tenable. There was, therefore, nothing in the court's rulings indicating or intimating that the defendant would not have been permitted to make or to attempt to make the proof suggested. But the defendant, in its defense, made no effort to prove that the ranges were not overstocked or that there was no greater number of cattle grazing on the ranges than the feed thereon would accommodate or supply. The witness Colling, defendant's foreman, to whom the above questions were propounded by defendant when he was testifying as plaintiff's witness, was called by the defendant as a witness, but was then asked no question as to that matter. The subject matter of the ques-

tions was peculiarly one of defense, and it would seem that defendant has little ground of complaint when, having been refused permission by the court to go into it on cross-examination of plaintiff's witness, it failed even to attempt to bring it in as a matter of defense, to which it was pertinent and appropriate.

While the points above considered are conceded by counsel for defendant to present the only questions of importance here, and, indeed, in one part of their brief admit that there is a conflict in the evidence which the jury has determined against defendant, yet, nevertheless, they declare in another part of their brief that the preponderance of the evidence was in favor of appellant. [3] Whenever the question is raised on appeal as to the side on which the evidence preponderates, and there is testimony supporting the conclusion of a jury or the findings of a trial court, which testimony is not inherently improbable, the answer must always be that the jury or the trial court has conclusively decided the question. In other words, the preponderance of the evidence in such case must always be held by a reviewing court to be with the victorious party in the court below, for the jury or the trial court has so found after subjecting all the testimony received before it to the tests whereby only the credence and the weight to which it is justly entitled may be determined. In this case, as has been herein already shown, the plaintiff and his employee, Sherman, testified that, upon the delivery of the former's cattle to defendant's ranges, said stock was in a strong and healthy physical condition, and, furthermore, declared that they, at the same time, had or entered into an express understanding or agreement with the defendant or its duly authorized agent that, in case there became, for any reason, a shortage of growing feed on the ranges, the defendant would furnish and feed plaintiff's stock with hay. The jury was apparently justified in finding, as impliedly it did find, that the defendant did not keep this agreement, and that, as a consequence, there being a shortage of growing feed on the ranges properly to feed the stock, a number of the cattle of plaintiff died from starvation or lack of sufficient or proper nourishment.

The law provides (Civ. Code, sec. 1834) that "a depositary of living animals must provide them with suitable

food and shelter, and treat them kindly.'' In this case the verdict implies that the defendant's conduct in the matter of the treatment of the plaintiff's cattle, or at least a portion of them, failed to measure up to the obligation imposed upon an agister or a depositary of living animals by said section, and we think, as before stated, that there is ample testimony disclosed by this record which supports the conclusion of the jury.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.