[Crim. No. 686.   Fourth Dist.   Sept. 18, 1950.]

THE PEOPLE, Respondent, v. RAY CULLEN, Appellant.

J. David Hennigan for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

GRIFFIN, J.—It is charged in the first count of the information that defendant Ray Cullen did on January 3, 1949, knowingly, falsely and fraudulently forge the name of Daniel T. Boyer upon the back of a $120 government check and passed it with intent to cheat and defraud said Boyer. Defendant was also charged in a second and third count with violating section 2 of Dangerous Weapons Control Law (Stats. 1923, ch. 339, pp. 695, 696) and with a prior felony conviction of counterfeiting, as well as a prior felony conviction of assault with a deadly weapon. Defendant admitted the prior convictions, and counts two and three were separated from count one for the purpose of trial on the first count. A jury trial was waived. A plea of not guilty was entered as to the first count. The court proceeded to trial upon that count and it found defendant guilty of forgery as charged. Defendant was committed to state prison on count one. Judgment ran concurrently with the judgment theretofore pronounced on counts two and three. Defendant appealed and only questions the sufficiency of the evidence to justify his conviction on the forgery count.

The evidence shows that defendant lived near Blythe, in a cabin on the bank of the Colorado River with his wife Mary. They were married in August, 1948, and on December 9 of that year Mr. Boyer, stepfather of Mary, came to live with them. Boyer was a veteran, about 80 years of age, and was drawing a pension of $120 a month. On January 3, 1949, defendant presented a pension check in said amount, dated December 31, 1948, and made payable to Daniel T. Boyer, to a bank in Blythe, where defendant was known and had an account. The back of the check carried the endorsed names "Daniel T. Boyer" and under it "Ray Cullen" when it was presented for payment and cashed. Boyer was not seen alive after January 4, 1949. In the early afternoon of that day defendant stated that Boyer had gone out on the Colo-

rado River in a boat that morning and that the empty boat was later found. Various relatives of Mrs. Cullen went to defendant's house on the night of January 4, in response to telephone calls that Mrs. Cullen and Mr. Boyer had mysteriously disappeared. One witness asked defendant if Mr. Boyer had received his pension check. Defendant replied that it came on January 1 but Boyer was too sick to go, and cash it so he took Boyer with him to town on January 3 and cashed his check; that he tried to help Boyer step from the curb but Boyer insisted he needed no help. On January 6, defendant told certain relatives that he had taken Boyer to town and that he (Boyer) cashed the check and put the money in his wallet. Later in the same day he stated that Boyer had been too ill to go to the bank so he, defendant, took the check in, got the cash for him, and turned the money over to Boyer. Later the same night, defendant told the police officers that when Boyer gave him the check to cash, it was already endorsed by Boyer and that the endorsement was not made in his presence. The police officer later told defendant he believed he had signed Boyer's name as the endorser. Defendant said he had not but that it was signed in his presence. He asked defendant to write some words for him so he could compare the handwriting but defendant refused. On February 27 defendant told Mrs. Cullen's sister that he had not taken Boyer in to cash the check but that he (defendant) had taken the check in and cashed it himself. In March, defendant told another witness that he had taken Boyer to the bank to get the check cashed. This witness then reminded defendant that he had previously told her that he had cashed the check and that Boyer was not taken to the bank. Defendant stated that he was mistaken as to the previous occasion. Defendant then told her that on January 3, he had "baptized" Mary Cullen, his wife; that "she was ready to go." The witness then asked if he had "baptized" Mr. Boyer, too, and he remarked: "You can't baptize anybody that is dead." She then asked him how he could have taken Boyer to get the check cashed on January 3, in the morning, if he was dead, and he told her he could not tell her any more because if he did he would incriminate himself. In another conversation defendant told her that either Mrs. Cullen or Mr. Boyer had endorsed the check and he did not know which one.

During the course of the investigation, a police officer asked the defendant why the endorsement on the check was so different from Mr. Boyer's regular signature. He stated that

Mr. Boyer had cut his finger and could not write too well with a bandage on it. The officer then stated that he did not believe it and that defendant would have been better off if he had said he had signed Mr. Boyer's name with his permission; that the defendant said he would not say that because it was not so; that Mr. Boyer sat at the desk in the house and signed the check himself, and that he had taken it to the bank to get it cashed for him, turning over the proceeds to Boyer when he returned to the house. Defendant later told a witness that it was not true that his wife and Boyer went out in a boat on the river on January 4, but that Boyer had met his death in a different manner. In another conversation, claimed to have been made under duress, defendant said Boyer died on January 4 from a gunshot wound.

It was stipulated at the trial that Boyer had not been seen since January 4, and that it may be presumed that he was dead and therefore unable to testify at the trial. Six previous monthly pension checks had been endorsed by Boyer in his own handwriting and exemplars of his handwriting were received in evidence. An examiner of questioned documents testified that Boyer did not write his name on the check in question; that it was written by defendant; that the capital letters in the name "Daniel T. Boyer" were disguised and the slant of the writing was changed from the normal slant which appeared in defendant's signature, and there were many other variations in an endeavor to disguise that signature; that although it did not resemble Boyer's signature, there was little, if any, disguise of Ray Cullen's signature.

At the conclusion of the People's case the defendant moved for an acquittal on the ground that there was no proof of the corpus delicti. The motion was denied. Defendant then took the stand as a witness and testified that the check arrived in the mail on the morning of January 3; that, at his home, he signed Boyer's name to the check at the request of Boyer, who was ill; that he signed his own name to the check at the bank, and after cashing it he returned home and gave the money to Boyer, who gave $20 to Mrs. Cullen, and that Boyer placed the remainder in his wallet.

Although defendant admitted making some false statements to the witnesses described, he denied telling certain other stories related by them. On cross-examination he gave conflicting testimony about the check transaction. He stated that he was at the bank when he signed Boyer's name and

at his home when he signed his own name to it; that his wife and not Boyer told him to go and cash the check.

On appeal defendant now argues first, that under section 470 of the Penal Code, defining forgery, there are three elements necessary to establish the crime: (a) Signing the name of another; (b) with intent to defraud; and (c) without authority to do so. It is then argued that since the prosecution had not met the burden of showing lack of authority of defendant to sign Boyer's name there was no corpus delicti established; that under the presumption of innocence rule defendant was presumed to have had Boyer's authority to sign his name until that presumption was overcome by competent evidence; and that defendant's motion for a verdict of acquittal upon the close of the People's evidence should have been granted, citing such cases as *People* v. *Mitchell,* 92 Cal. 590 [28 P. 597, 788]; *People* v. *Whiteman,* 114 Cal. 338 [46 P. 99]; *People* v. *Lundin,* 117 Cal. 124 [48 P. 1024]; *People* v. *Maioli,* 135 Cal.App. 205 [26 P.2d 871]; *People* v. *Hidalgo,* 128 Cal.App. 703 [18 P.2d 391]; *People* v. *Wade,* 57 Cal.App.2d 36 [133 P.2d 646]; *People* v. *Mc-Williams,* 117 Cal.App. 732 [4 P.2d 601]; *People* v. *Stoddard,* 85 Cal.App.2d 130 [192 P.2d 472]; and 12 California Jurisprudence, page 666, section 16.

The rule elicited from the cases cited is that upon a charge of forgery of a check the prosecution has the burden of proving the corpus delicti and must show both that the person whose name is alleged to have been forged is a real person, that his name was signed to the check without his authority, and that to prove an accused person signed the name of another to an instrument and that he passed such instrument as genuine does not prove the commission of a crime. It must still be shown that it was a false instrument and this is not proven until it is shown that the person who signed the other's name did so without authority, and until this proof is met it is not shown to be a false instrument and the defendant is not put to his proof at all.

Conceding the rule thus established, the first question is whether or not there was sufficient evidence, independent of the admissions of defendant, to establish the corpus delicti. It is conceded by the defendant that he did in fact endorse Boyer's name on the back of the check for the purpose of cashing it. His only contention is that the People failed to show he did not have authority so to do. The rule is that to authorize the reception and consideration by the jury of evi-

dence of an extrajudicial confession or admission of a defendant, it is not required that the prosecution establish the corpus delicti by proof of a clear and convincing character, as is required to support a conviction. Slight proof is all that is required. Slight evidence is sufficient where an attempt to prove a negative is being made. (*People* v. *Macbeth*, 104 Cal. App. 690, 693 [286 P. 448].) In *People* v. *McWilliams, supra,* it was held that under a charge of issuing a fictitious check the city directory was sufficient evidence to show there was no such individual as the person whose name was signed to the check. *People* v. *Terrill,* 133 Cal. 120 [65 P. 303], was a forgery case, charging the issuance of a fictitious city warrant, wherein the People were called upon to prove that no such person as the one named as payor of the check existed, and the court held that a showing that the only other person in the employ of the city bearing that name on a city warrant did not write nor authorize to be written his name was sufficient negative proof that the signature was unauthorized. (See, also, 12 Cal.Jur. § 16, p. 666.) It is not necessary to be proven by evidence of the owner or maker of an instrument that authority was not given. In the absence of such owner or maker as a witness, lack of authorization may be proven circumstantially. (*People* v. *Stoddard,* 85 Cal.App.2d 130 [192 P.2d 472] ; *People* v. *Cline,* 79 Cal.App.2d 11 [179 P.2d 89].)

Here, for six months previous, Boyer was able to and did endorse his own signature to his pension checks. Defendant's varied stories as to why Boyer did not sign the check on this occasion raises considerable suspicion as to whether Boyer was in fact alive at the time defendant claims he was authorized by Boyer to sign the check for him. (According to defendant's counsel, stated in open court, defendant has subsequently been convicted of the murder of Boyer and that case is now pending on appeal.) The fact that Boyer's name, although not a true replica of Boyer's signature, was disguised and was clearly distinguishable from defendant's natural handwriting, was a circumstance that the jury was entitled to consider in determining the question of authority. Nothing was said by defendant to the bank clerk about Boyer's purported signature, as to whether defendant signed his name under some claimed authority or whether Boyer himself signed it. Apparently the disguise was for the purpose of leading the bank clerk to believe that Boyer did in fact endorse it rather than suffer an examination by the bank clerk as to

defendant's authority to endorse it for him. There seems to be no other logical inference concerning the authority to be drawn from the fact of such disguise.

The case of *Kiekhoefer* v. *United States Nat. Bank*, 2 Cal. 2d 98 [39 P.2d 807, 96 A.L.R. 1244], cited by defendant to show that no significance may be here attached to the evidence of disguise in the handwriting, is readily distinguishable. That case merely held that an agent who *had authority* to sign the name of his principal to an endorsement, did not commit forgery by signing it in imitation of the maker's signature. In the instant case there is no evidence that the defendant had any authority to sign the name of Boyer to the check except the impeached testimony of the defendant. Under the circumstances it is obvious that the disguise has significance as evidence of lack of authority.

▉ We conclude that the corpus delicti was sufficiently established. There was a sufficient inference of lack of authority which the trier of fact was entitled to draw from the circumstances established. Unless such inferences do violence to reason an appellate tribunal is not permitted to interfere. (*People* v. *Stoddard*, 85 Cal.App.2d 130, 137 [192 P.2d 472].) Under this conclusion the various statements and admissions of defendant were admissible not only for the purpose of impeachment but to furnish further evidence of the fact that defendant was not in fact authorized to endorse Boyer's name to the check. He first claimed that Boyer himself signed the endorsement. When he refused to write an exemplar, defendant was told by an officer that he did not believe Boyer had signed the check because the handwriting indicated that defendant himself signed Boyer's name to it. The officer then told him it would have been better for defendant to have said that Boyer authorized him to sign the check. Defendant replied that he would not say that because it was not so, and if he told any more it would incriminate him. This last statement, if true, was in effect a clear admission by the defendant that he was not authorized to endorse Boyer's name to the check. False declarations made by an accused for the purpose misleading or warding off suspicion, though not conclusive of guilt, may nevertheless strengthen the inference arising from the facts. (*People* v. *Peete*, 54 Cal.App. 333 [202 P. 51].) Defendant was impeached as a witness by proof of prior convictions of felonies and prior inconsistent statements. The fact that defendant subsequently testified at the trial that he was so authorized merely created a conflict in the evidence

for the determination of the trier of facts, and under the well-known rule the finding of the trial court cannot be disturbed on appeal. (*Mitchell* v. *Excelsior Water & Mineral Co.*, 41 Cal.App. 240, 246 [182 P. 326].)

In addition, the attorney general also argues in support of this finding, that the so-called rule of convenience or necessity applies in a forgery case under the circumstances here related, and accordingly, where the subject matter of a negative averment in the information, or a fact relied upon by the defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof of such averment or fact is upon him, citing *People* v. *Agnew*, 16 Cal.2d 655, 663 [107 P.2d 601]; *People* v. *Cline*, 79 Cal.App.2d 11, 14 [179 P.2d 89]; and *People* v. *Caldwell*, 55 Cal.App.2d 238, 251 [130 P.2d 495].

Defendant contends otherwise and cites such authorities as *People* v. *Frey*, 165 Cal. 140 [131 P. 127]; *People* v. *Quarez*, 196 Cal. 404 [238 P. 363]; and 8 California Jurisprudence, page 167, section 248; and cases there cited.

In view of the previous determination it will be unnecessary to discuss this contention.

The only remaining argument is that there was no evidence of defendant's intent to defraud. The claim is that since defendant testified he turned over to Boyer the $120 received, no one was defrauded by the transaction. Under the circumstances of this case the court was not bound by the self-serving statement of the defendant that he did turn the money over to Mr. Boyer. (*People* v. *Freer*, 104 Cal.App. 39, 44 [285 P. 386].) Defendant made several conflicting statements as to the disposition of the money. In one instance he stated that Boyer himself went to the bank with defendant and cashed the check. In another statement he related that he cashed the check and turned the money over to Boyer at his home, and in still another he stated he turned the money over to Boyer and that Boyer in turn gave Mrs. Cullen a twenty-dollar bill from the proceeds for Boyer's board. The mysterious disappearance of the two persons about that time might well give rise to the inference that the defendant never did turn over to Boyer the proceeds of the forged check. False statements made by one who has been confronted with an accusation of the commission by him of a criminal offense have been repeatedly held to constitute proper evidence of consciousness of guilt. (*People* v. *Sampsell*, 104 Cal.App. 431 [286

P. 434].)  Since there was sufficient evidence to show defendant wrongfully forged Boyer's name to the check, without authority, the trial court had the right to infer, from the circumstances established, that defendant intended to defraud someone.  The intent to do a wrongful act is always provable by extraneous circumstances, i.e., by some physical act or acts which, with sufficient clearness, disclose the operation of the mind with respect to the wrongful act, and a person, without authority, signing the name of another to a check is itself evidence, quite conclusive, that his intent was to prejudice or damage that person.  (*People* v. *Collins,* 60 Cal.App. 263, 268 [212 P. 701].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 16, 1950.