[Crim. No. 5545. Second Dist., Div. One. Sept. 5, 1956.]

THE PEOPLE, Respondent, v. ERWIN E. HASSEN, Appellant.

Jerry Giesler and Robert A. Neeb, Jr., for Appellant.

Edmund G. Brown, Attorney General, and James L. Mamakos, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, containing six counts, defendant was accused as follows: (1) Count I—the crime of grand theft in violation of section 487, subdivision 1, of the Penal Code, a felony, in that on or about August 4, 1954, at or in the county of Los Angeles, the defendant did wilfully, unlawfully and feloniously take a certified check of the value of $5,400 which was the personal property of Zenith National Insurance Company; (2) Counts II, III, IV and V—the crimes of forgery in violation of section 470 of the Penal Code, a felony, in that on or about June 7, 1954, August 16, 1954, September 10, 1954, October 8, 1954, at or in the county of Los Angeles, the defendant, with intent then and there to cheat and defraud M. A. Showers, Morris Miller and Frank Fishman, did wilfully, unlawfully, fraudulently and feloniously make, alter, forge and counterfeit a certain receipt on each of the above dates in writing, for the payment of money, each in the sum of $5,407.20, and did then and there utter, publish and pass the same, knowing that said receipt was false, altered, forged and counterfeited, as aforesaid, with intent then and there to cheat and defraud the said M. A. Showers, Morris Miller and Frank Fishman; (3) Count VI—the crime of forgery in violation of section 470 of the Penal Code, a felony, in that on or about September 8, 1954, at or in the county of Los Angeles, with intent then and there to cheat and defraud Morris Miller and Bank of America National Trust and Savings Association, a corporation, did wilfully, unlawfully, fraudulently and feloniously make, alter, forge and counterfeit a certain beneficiary's statement, dated September 8, 1954, in connection with the Bank of America, Beverly-Wilshire Branch, Escrow Number 213-7141, and did then and there utter, publish and pass the same, knowing that said beneficiary's statement

was false, altered, forged and counterfeited, as aforesaid, with intent then and there to cheat and defraud the said Morris Miller and Bank of America National Trust and Savings Association, a corporation, and M. A. Showers.

The defendant was arraigned, made a motion under section 995, Penal Code, which the court granted as to Count I and denied as to the other counts, and he then entered his plea of "Not Guilty."

The cause was called for trial and a jury was selected and sworn. Pursuant to stipulation of counsel and the defendant personally consenting, trial by jury was waived and the jury was discharged.

By stipulation of counsel, and the defendant personally consenting, the evidence received by the court and jury was submitted to the court to determine the guilt or innocence of the defendant on Count V only. As to the remaining counts, II, III, IV and VI, the court declared a mistrial pursuant to stipulation of counsel. Thereafter, these latter counts were dismissed.

Defendant was found guilty of forgery as charged in Count V of the information. Motion for a new trial was denied and defendant was sentenced to imprisoment in the county jail for the term of one year. Execution of sentence was suspended and defendant was granted conditional probation.

From the order denying his motion for a new trial and from "the verdict," defendant prosecutes this appeal.

The following will serve as an epitome of the evidence relating to Count V only (on which count alone defendant was convicted).

Four trust deeds came into existence relating to property on the corner of Rossmore and Rosewood Streets in Los Angeles.

The defendant was the last purchaser of this property and bought it on February 27, 1953.

On January 29, 1954, the Guarantee Mutual Life Company, holder of the first trust deed, sold the first trust deed to Zenith National Insurance Company. Up to and including January 4, 1954, the Hassen family, Erwin E. Hassen Foundation and Hassen Hospitals, Inc., were the only stockholders of Zenith Company.

After purchasing the property, the defendant stated to Mr. Morris Miller, a shareholder of the Country Club Villa Corporation, and holder of the second trust deed on the above property, that he could not make the payments on the first trust

deed. Thereafter, the defendant and Miller had a number of conversations concerning payments on the three trust deeds, and later Miller filed an action against the defendant in August, 1953. This suit was settled and part of the settlement provided that the defendant shall pay the amounts which become due on the first trust deed and thereafter provide Miller with a receipt of such payment within 10 days after such payment accrued.

Count V charges the defendant with having forged the name of M. A. Showers, cashier of Zenith National Insurance Company, on a receipt of the Zenith Company, showing that the October payment on the first trust deed was made. The defendant conveyed this receipt to Miller who believed that this receipt represented that the October payment on the first trust deed was in fact made.

Mrs. Cornwell, cashier of Zenith Company, who was M. A. Showers prior to her marriage and signed documents of the Zenith Company with her signature "Mary Ann Showers" or "M. A. Showers" testified that she did not sign the October corporate receipt, nor did she authorize anyone any time to sign her name to that document, nor did she at any time receive $5,407.20 described in that document.

The records of Zenith Company revealed that no principal payments had been made on the first trust deed after March 1, 1954. People's Exhibit Number 8 represented a principal and interest payment on the first trust deed.

Mr. Miller discovered that the October corporate receipt, People's Exhibit Number 8, was not valid in November, 1954. Subsequently, the defendant admitted to Miller that he had given him an invalid receipt and described how he had copied the signature of "M. A. Showers" thereon. At a later meeting between Miller and the defendant, the defendant tried to "grab" an envelope in Miller's possession which contained a photostatic copy of the October corporate receipt which the defendant had given him.

As his first and main ground for reversal of the judgment and order in the instant case appellant earnestly contends that proof of the corpus delicti of the crime of forgery charged in Count V was lacking. In this regard appellant relies on the claim that in a forgery prosecution it must be shown that the instrument was false and that this is not proven until it is shown that the person who signed another's name did so without authority (*People* v. *Whiteman,* 114 Cal. 338, 344 [46 P.

99]). That the only manner in which the prosecution could show lack of authority in this case would be to show that the Zenith Insurance Corporation itself gave no authority for the receipt here in question to be issued and that this required the prosecution to produce all of the minutes and by-laws of the corporation dealing with authority to act for the corporation, or to have shown by a complete set of minutes and by-laws what persons were authorized to do certain acts in behalf of the corporate entity (Corp. Code, § 832; *People* v. *Hidalgo,* 134 Cal.App. 293, 294 [25 P.2d 270]). Appellant argues that the necessity for such proof assumes importance in this case because the corporation was admittedly a closely knit family corporation, founded by defendant and controlled by him and his family.

While it is true, as contended by appellant, that it is a well established doctrine that no person can be convicted of a crime on extrajudicial admissions alone and that the corpus delicti must be proven independent of admissions, we are satisfied that the evidence, leaving entirely out of consideration the statements and admissions of appellant, sufficiently proves the corpus delicti. ▮▮ Proof of the corpus delicti does not necessarily involve or require proof that the crime charged was committed by the accused (*People* v. *Cowan,* 38 Cal.App.2d 231, 240 [101 P.2d 125]; *People* v. *Cowling,* 6 Cal.App.2d 466, 471 [44 P.2d 441]; *People* v. *Wilt,* 40 Cal.App.2d 124, 127 [104 P.2d 387]; *People* v. *Shapiro,* 40 Cal.App.2d 321, 323 [104 P.2d 688]; *People* v. *Flores,* 34 Cal.App. 393, 394 [167 P. 413]), and it is well settled that the prosecution is not required to establish it by proof to the same degree of certainty as is required to establish the fact of guilt. Slight or prima facie proof is all that is necessary. ▮ It may also be proved by circumstances shown in evidence, or by inferences reasonably drawn therefrom; direct or positive evidence is not essential. ▮ When a prima facie case is presented that a crime was committed the evidence is sufficient (*People* v. *Hudson,* 139 Cal.App. 543, 544 [34 P.2d 741]; *People* v. *Clark,* 70 Cal.App. 531, 544 [233 P. 980]; *People* v. *Wiezel,* 39 Cal.App.2d 657, 664 [104 P.2d 70]; *People* v. *Van Scoyoc,* 25 Cal.App.2d 416, 418 [77 P.2d 485]; *People* v. *Seymour,* 54 Cal.App.2d 266, 275 [128 P.2d 726]).

▮ With the foregoing rules in mind the record reveals that there was before the court evidence that:

(1) After the appellant purchased the Casa Blanca Hotel

(Rossmore and Rosewood Streets), thereby becoming obligated to make payments on the four trust deeds on that property, he became delinquent in his payments. This led to a suit by Miller, holder of the second trust deed, which was settled on condition that the appellant supply Miller with receipts of payments on the first trust deed within 10 days after they accrued.

(2) In October, 1954, appellant gave to Miller a receipt from Zenith National Insurance Company, holder of the first trust deed, signed by "M. A. Showers," cashier of Zenith Company, indicating that the October payment of $5,407.20 was made. Similar receipts for the months of June, August and September in similar fashion were earlier delivered to Miller by the appellant. Possessed of these receipts, Miller was secure in the belief that all the payments due on the first trust deed had been made up to and including October 8, 1954.

(3) Mrs. Mary Ann Cornwell, the former Mary Ann Showers, or M. A. Showers, cashier of Zenith Company, testified that the signature on the October, 1954, receipt was not her signature, and that she did not at any time authorize anyone to sign her name thereto, nor did she ever receive the $5,407.20 described thereon. In like fashion she testified in regard to June, August and September receipts. All the above receipts were written on stationery from memoranda pads of the type available and used by Zenith Company.

(4) The records of Zenith National Insurance Company do not reflect the first trust deed payments for the months of June, July, August, September and/or October, 1954. In fact, the records reveal that no principal payments on the first trust deed were made after March 1, 1954.

(5) In September, 1954, Miller attempted to borrow money on his second trust deed and pursuant thereto gave to the appellant a beneficiary statement obtained from the Bank of America for the defendant to take to Zenith Company to have that company insert thereon the balance remaining on the first trust deed. The defendant returned this document to Miller with the figure $290,000 in the appropriate space and bearing the signature "M. A. Showers." The defendant stated to Miller that he had observed "M. A. Showers" sign the document and, in Miller's presence, wrote thereon, "Witness E. E. Hassen" after Miller indicated that the document ought to have been witnessed.

Mrs. Cornwell testified that she did not sign the beneficiary

statement, nor did she at any time authorize anyone to sign her name to that document.

(6) Miller discovered that the above corporate receipts, and the October, 1954, receipt, were invalid in November, 1954, and thereafter had several conversations with the defendant relative thereto. At one of these meetings the defendant attempted to "grab" an envelope in Miller's possession which contained photostatic copies of the above receipts.

All of the foregoing evidence was admissible under the stipulation after trial by jury had begun and when a jury was waived and the cause submitted to the court on Count V, at which time it was agreed that all of the evidence presented up to that time as to all counts was to be considered by the court in determining appellant's guilt or innocence as to Count V. In *People* v. *McKenna*, 11 Cal.2d 327, 332 [79 P.2d 1065], it is stated, "The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud. (Pen. Code, § 470) . . . the test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine. (Citing cases.)"

Measured by the foregoing rules and the testimony hereinabove narrated, we are satisfied that the corpus delicti as to Count V was legally established. There can be no doubt that Morris Miller acted upon the fictitious receipt as being genuine and that it was given to him by appellant with intent to defraud.

We are convinced that appellant's argument that since the receipts were corporate receipts the "lack of authority" element could only be proved by showing that the corporation itself gave no authority for issuance of the receipt lack substance. Conceding that the Zenith Company through its officers could authorize the issuance of corporate receipts the corporation was without power to authorize the signing by appellant of the name of "M. A. Showers." This was her personal signature and because she was an employee, the corporation was not authorized, without her consent, to assign the use of her personal signature to appellant or anyone else. Appellant relies upon the case of *People* v. *Hidalgo*, 128 Cal.App. 703 [18 P.2d 391], and *People* v. *Lundin*, 117 Cal. 124 [48 P. 1024]. These authorities do not aid appellant because they are easily distinguishable from the facts and circumstances present in the case now engaging our attention. The conviction in the Hidalgo case was reversed because the

defendant was charged with having forged and passed a check drawn by "Baker Ice Co., L. Baker, H. Spencer" and there was no evidence at the trial that L. Baker or H. Spencer were not authorized to draw checks on this account. The bank records revealed that it was authorized to honor a signature by "J. M. McKenzie, Manager of the corporation, *or any other*, by said J. M. McKenzie." (Emphasis added.) No showing was made that J. M. McKenzie did not authorize L. Baker and H. Spencer to draw the checks, which were the subject of the forgery. Moreover, the court stated that it was necessary for the prosecution to show that neither of these persons was authorized to sign the checks, and if authorized that neither of them had signed the checks or authorized his name to be signed by the defendant thereto. Since the prosecution made no such attempt, and since neither J. M. McKenzie nor any other officer of the corporation was called as a witness, the evidence failed to show lack of authority.

In the Lundin case the defendant was convicted of forgery for having passed a check signed by one John F. Johnson, but no testimony was introduced that the accused was not authorized to sign the name of the witness John F. Johnson to the check.

In the instant case, the witness Mary Ann Showers or M. A. Showers, whose name was signed to the receipt in question, not only testified that the receipts which purportedly bore her signature were not signed by her but that she did not either orally or in writing authorize anyone to sign her name to those receipts. What stronger evidence of "lack of authority" could be presented?

Since the corpus delicti was adequately and legally established, we deem it unnecessary to here set forth in detail the voluminous evidence received while the cause was on trial before the jury other than to say that all of it was properly before the court in considering Count V, pursuant to stipulation as follows:

"MR. CRAIL: Your Honor please, as far as the People are concerned, we will stipulate that the case insofar as Count five is concerned, that the evidence thus far received may be submitted to the Court to determine the guilt or innocence of the defendant on that particular Count.

"THE COURT: Very well.

"MR. HIGGINS (Attorney for Defendant): We so stipu-

late, your Honor. You so stipulate personally, do you not, doctor?

"THE DEFENDANT: Yes.

"MR. HIGGINS: I have explained to the defendant, your Honor, that all of the testimony that has been produced in this trial is to be considered by your Honor with reference to his guilt or innocence as to Count 5 of the Information. You understand that, do you, doctor?

"THE DEFENDANT: Yes.

"THE COURT: Very well."

Suffice it to say that when all of the evidence is considered it reveals a course of conduct on the part of appellant teeming with fraud and replete with intrigue, deception and duplicity, all of which not only established the corpus delicti but fully warranted the court in finding the accused guilty of the crime of forgery as charged in Count V of the information. As stated by respondent, it "convincingly displays the defendant's felonious intent to deceive and defraud the junior secured creditors. It was the defendant's intent to lull the holders of the junior trust deeds into a feeling of security by producing the invalid receipts of the first trust deed holder, indicating, thereby, that the defendant was keeping up these payments."

It is also noteworthy that appellant did not take the witness stand, nor did he present any witnesses to testify in his behalf. From a reading of the record in this case we are impelled to the view that it presents a situation wherein the rule referred to as "the rule of convenience or necessity" might properly be applied. The rule is thus stated in 16 Corpus Juris 530, quoted with approval in *People* v. *Osaki*, 209 Cal. 169, 191 [286 P. 1025], and *People* v. *Agnew*, 16 Cal.2d 655, 663 [107 P.2d 601], "Where the subject matter of a negative averment in the indictment, or a fact relied upon by defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him."

Particularly applicable to the case at bar is the language of the court in *People* v. *Caldwell*, 55 Cal.App.2d 238, 251-252 [130 P.2d 495], as follows: "While the information accused appellant of a forgery necessitating proof that he did not have the authority . . . to affix the . . . name to the certificate or to the indorsement upon it, appellant did not take the stand to throw any light upon that subject. Under the circum-

stances . . . appellant should have assumed some of the responsibility of defeating the accusation rather than of maintaining the attitude of expecting the prosecution to fail in its proof. . . . His proof of possession of any such authority would instantly have dispelled the web that entangled him, and if such proof existed it lay peculiarly within his knowledge.'' (See also *People* v. *Terrill,* 133 Cal. 120 [65 P. 303].)

That recognition of the rule of convenience does not deprive the accused of the presumption of innocence was the holding in *People* v. *Cline,* 79 Cal.App.2d 11, 15 [179 P.2d 89], while in *People* v. *Osaki, supra,* page 186, our Supreme Court said: ''It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the government. (4 Wigmore, Evidence, § 2486.)''

Finally, appellant assigns as prejudicial error the action of the court in sustaining objections to certain questions propounded on cross-examination of the witness Edgar S. Wilkinson, President of Zenith Corporation. While we are not directed to any particular questions to which it is claimed that objections were erroneously sustained, we have examined the record and in the light of appellant's brief it appears that he was attempting to show that Zenith Corporation was arranging to acquire the trust deed in question for the express purpose of making it unnecessary for appellant to make payments of principal and that the only reason there was ever any foreclosure which affected the trust deed holders on the property was because the Insurance Commissioner questioned the transaction, ''and this was all contrary to what Dr. Hassen (appellant) expected to happen.'' We fail to perceive the materiality of the testimony attempted to be elicited as being within the issues framed by the information or established by the evidence, and therefore conclude that the objections were properly sustained on that ground as well as on the ground, in some instances, that the questions called for hearsay testimony.

 Appellant also contends he was entitled to ascertain from the witness what the latter knew about Zenith Corporation's arrangement to forego payments on the loan because of appellant's announced position that all of his acts were with the knowledge and consent of the insurance company officers. The objections to this line of questioning were properly sustained. The only ''announced position'' of appellant that we can find in the record was a statement made by defense counsel while arguing an objection to a question

propounded to the witness Wilkinson on cross-examination. There is no testimony as to such a position in the record. Neither appellant himself or any other witness testified with reference thereto. And, as heretofore pointed out, the Zenith Corporation was without authority to authorize appellant to sign the name of Mary Ann Showers or "M. A. Showers" to the receipt in question without her consent.

For the foregoing reasons, the attempted appeal from the "verdict" is dismissed since the trial by jury was waived, and for the further reason that the statute does not authorize an appeal to be taken from a verdict. The order denying defendant's motion for a new trial is affirmed.

Doran, J., and Fourt, J., concurred.