[Crim. No. 1821.   Fourth Dist.   Sept. 4, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MARTIN LEONARD, Defendant and Appellant.

410

Stuart C. Wilson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendant from a judgment of conviction on three counts of forgery.

## FACTS

The basic facts are not in dispute. At the trial it was proved by defendant's signed and witnessed extrajudicial admission that he wrote the checks in question without any authority from the owner of the bank account and obtained

the cash therefrom for his own use. He had had four prior felony convictions which were charged and admitted prior to trial. He did not take the witness stand in his own defense. He offered only one witness, a person who was then under commitment to a state hospital as an alcoholic, who testified that defendant and Evangeline Sambos, the owner of the checking account, had lived together, and that she had handed the pink and white slips of her automobile to defendant and asked him to look after her financial affairs. Nothing was said about checks. Defendant does not contend that the evidence is insufficient to support the judgment if the corpus delicti was properly established.

Thus defense counsel has commendably cut straight to the only point in the case worthy of discussion. He states that "the only issue presented by this appeal is whether or not the People made a prima facie showing that Evangeline Sambos did not authorize defendant to sign her name as maker to the checks in question."

In support of his contention that no prima facie case was shown he cites *People* v. *Whiteman,* 114 Cal. 338 [46 P. 99]; *People* v. *Lundin,* 117 Cal. 124 [48 P. 1024]; *People* v. *Hidalgo,* 128 Cal.App. 703 [18 P.2d 391]; and *People* v. *Maioli,* 135 Cal.App. 205 [26 P.2d 871]. The *Whiteman* case involved a check on a New York bank. No evidence was available from that bank on authority of defendant to sign the check, or why payment was refused. The *Lundin* case involved failure to identify the person whose signature was alleged to be forged. The *Hidalgo* case involved a corporation from whose records it could not be ascertained just who was authorized to sign. The *Maioli* case and the *Hidalgo* case involved failure to call available witnesses on questions of authority to sign and did not discuss the question of prima facie evidence of the corpus delicti. We cannot accept them as controlling in the case at bar.

### CORPUS DELICTI

In considering the question of establishment of corpus delicti, it is necessary to strike from our minds all of the facts above recited, for all of them, whether put in by the People or defendant, are legally subsequent to the point at which the trial court must have determined whether or not the corpus delicti was sufficiently established to permit the use of defendant's extrajudicial statements. (*People* v. *Cobb,* 45 Cal.2d 158, 161 [3-5] [287 P.2d 752].)

The proof of the corpus delicti or body of the crime does not entail connecting defendant with it, although sometimes such proof does incidentally point to the defendant. What we are principally concerned with, at this state of the proceedings, is whether the crime charged, or some other crime legally included within that charged, has been committed by someone. In the consideration of the proof, the defendant, while legally an active participant, is theoretically a stranger to the crime. His connection with the crime is a separate consideration. (*People* v. *Duncan*, 51 Cal.2d 523, 528 [3] [334 P.2d 858]; *People* v. *Cobb, supra*, p. 161 [5]; *People* v. *Van Wagoner*, 196 Cal.App.2d 126, 128 [3, 4] [16 Cal.Rptr. 342]; *People* v. *Battle*, 188 Cal.App.2d 627, 631 [4] [10 Cal.Rptr. 525]; *People* v. *White*, 186 Cal.App.2d 853, 857 [1] [9 Cal.Rptr. 99]; *People* v. *Cullen*, 99 Cal.App.2d 468, 473 [2] [221 P.2d 1016]; *People* v. *Griffin*, 98 Cal.App.2d 1, 46 [23] [219 P.2d 519].)

The quantum of the weight of the evidence is at this point different from that through which it is sought to convince the trial body beyond a reasonable doubt of the guilt of the defendant. It is only necessary, in establishing the corpus delicti for purposes of permitting receipt in evidence of defendant's extrajudicial statements, to establish a prima facie case. As was said in *People* v. *McMonigle*, 29 Cal.2d 730, 739-740 [4] [177 P.2d 745], quoting from *People* v. *Selby*, 198 Cal. 426, 438 [245 P. 426], " 'It may finally be said that the authorities are unanimous on the proposition that the *corpus delicti* is not required to be established to a moral certainty and beyond a reasonable doubt before the extrajudicial statements, admissions, or confessions of a defendant may be received in evidence—*prima facie* proof of the *corpus delicti* being sufficient for that purpose.' "

As was said in *People* v. *Cullen, supra*, 99 Cal.App.2d 468, 472-473 [2], ". . . The rule is that to authorize the reception and consideration by the jury of evidence of an extrajudicial confession or admission of a defendant, it is not required that the prosecution establish the corpus delicti by proof of a clear and convincing character, as is required to support a conviction. Slight proof is all that is required. Slight evidence is sufficient where an attempt to prove a negative is being made."

Also, in *Maganini* v. *Quinn*, 99 Cal.App.2d 1, 8 [4] [221 P.2d 241], "The words 'prima facie' mean literally, 'at first view,' and a prima facie case is one which is received

or continues until the contrary is shown and can be overthrown only by rebutting evidence adduced on the other side."

The foregoing rules apply to forgery. (*People* v. *Stoddard,* 85 Cal.App.2d 130, 135-137 [3-5] [192 P.2d 472]; *People* v. *Cullen, supra,* p. 473 [2]; *People* v. *Cline,* 79 Cal.App.2d 11, 14, 15 [2-3] [179 P.2d 89]; *People* v. *Hassen,* 144 Cal.App.2d 334, 339 [1-4] [301 P.2d 80].)

With these rules in mind, we examine the evidence which the People assert and the defendant denies establishes, prima facie, that the crime of forgery, as alleged in the information, was committed by someone: On August 1, 1961, Evangeline Sambos entered the hospital at Camp Pendleton, where she continued to reside, under treatment for yellow jaundice, until September 10, 1961. During this time, defendant wrote ten checks on Evangeline's bank account for amounts ranging from $25 to $100 and totalling $425. The three checks charged in the information are a part of the ten checks mentioned. The last check presented, if paid, would have overdrawn her account. Each check was drawn to defendant as payee, purported to have been signed in person by Evangeline, and was presented to the bank, a bowling establishment, a market or liquor store in or near Oceanside, California. In each case, the defendant took cash but no merchandise. In each case the face of the check was fully completed when presented to be cashed. In four cases he endorsed the check under the eyes of the person cashing it. In the other six cases the witness did not remember whether or not it was endorsed at the time of cashing. The face of each check was drawn in a slow, careful manner distinctly unlike the normal handwriting of defendant. So slow was said writing that the expert was able, in the enlargements, to point out the minute nerve tremors resulting from slowness. The bank paid some of the checks but was apparently disturbed by some points of dissimilarity in the writing on the checks and Evangeline's writing and telephoned to her about the checks in the "200 series" coming to the bank. None of this conversation was allowed in evidence except that she appeared perturbed and said she would call the police. This was permitted solely to show her then "state of mind." Each check was endorsed by defendant in his normal free hand. In no case did defendant write the name of Evangeline as being "by" himself nor did he in any way reveal to any of his victims that Evangeline had not personally signed each check. The bank signature card bore no authority for him to sign checks on the account.

Judicial evidence is ". . . the means, sanctioned by law, of ascertaining in a judicial proceeding the truth respecting a question of fact." (Code Civ. Proc., § 1823.)

Many text writers have accumulated innumerable attempts to define or explain what evidence is, each fitting the facts of a particular case or elucidating at length the views of the author. (1 Wigmore on Evidence, § 1; Black's Law Dictionary (4th ed.) p. 657; 31 C.J.S. § 505; 2 Witkin, California Evidence, § 5, p. 4.) ■ A review of all these authorities makes clear that evidence is that probative material, legally received, by which the tribunal may be lawfully persuaded of the truth or falsity of a fact in issue.

There may well be, as suggested by the Attorney General, room for the application of the rule of *onus probandi* as discussed in the cases of *People* v. *Osaki,* 209 Cal. 169, 191 [286 P. 1025]; *People* v. *Agnew,* 16 Cal.2d 655, 662 [9] [107 P.2d 601]; *People* v. *Hassen,* 144 Cal.App.2d 334, 343 [8] [301 P.2d 80] and other authorities cited by those cases. However, the affirmative facts proved by the People are such that the application of that rule is unnecessary.

■ The evidence of the lack of authority to sign Evangeline's name—as shown by the bank signature card, the very careful preparation of the face of the check to make it appear that Evangeline had drawn and signed the check personally, the attempt by defendant to conceal from the person looking at the check that defendant had himself drawn it, actual concealment of that fact by failure to warn the person who cashed the check that defendant had himself signed Evangeline's name, his endorsement in his own true handwriting, which did not look to the casual observer like the handwriting on the face of the check, his securing cash on *every* check—makes a sum total of circumstances from which a reasonable mind could only draw the prima facie conclusion that defendant had no authority to sign Evangeline's name; that he knew he had no such authority, and with intent to defraud the parties named he uttered and passed the checks as genuine. We are not here concerned with failure to call an available witness. Evangeline died before the trial. Her lips are sealed by death. She did all she could do when she called the police and authorized the forged checks to be turned over to them.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.